# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **SALVADOR MARTINEZ and GLORIA MARTINEZ, Individually and as personal representatives of the ESTATE OF MICHAEL MARTINEZ**<br>    **Plaintiffs,** | §<br>§<br>§<br>§<br>§<br>§ | |
| **V.** | §<br>§ | **CIVIL ACTION NO. 6:17-cv-9** |
| **SOUTHWESTERN CORRECTIONAL, L.L.C. d/b/a LASALLE CORRECTIONS, L.L.C, MICHAEL CRITTENDEN, CHRISTOPHER SIMPSON, and MILTON WALKER**<br>    **Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§ | |

## ORIGINAL COMPLAINT AND REQUEST FOR JURY TRIAL

**NOW COMES** Salvador Martinez and Gloria Martinez, Individually and as personal representatives of the Estate of Michael Martinez, collectively termed Plaintiffs herein, by and through their attorneys of record, and bring this, their *Original Complaint and Request for Jury Trial*, complaining of and about Southwestern Correctional, L.L.C. d/b/a LaSalle Corrections, L.L.C. and its employees, Michael Crittenden, Christopher Simpson, and Milton Walker, as more specifically pled herein.

### I. JURISDICTION

1.    Jurisdiction is conferred upon this court pursuant to 28 U.S.C. §1331 and because the matters in controversy arise under the laws of the United States and pursuant to 28 U.S.C. §1343 because this is an action to recover damages for the deprivation of civil rights pursuant to 28 U.S.C. §1983.

2.    Additionally, this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

3.    Further, this Court has jurisdiction to award attorneys' fees and costs to the Plaintiffs pursuant to 42 U.S.C. §1988.

## II. VENUE

4.    Under 28 U.S.C. §1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiffs' claims occurred in the Western District of Texas.

## III. PARTIES

5.    Plaintiff Salvador Martinez, a resident of McLennan County, Texas is the surviving father of Michael Martinez. He brings this suit in his individual capacity, as an heir-at-law to Michael Martinez, and as the representative of Michael Martinez's estate. Michael Martinez died intestate, and there were no probate proceedings arising from his death as none were necessary. All of Michael Martinez's legal heirs are parties to this action.

6.    Plaintiff Gloria Martinez, a resident of McLennan County, Texas is the surviving mother of Michael Martinez. She brings this suit in his individual capacity, as an heir-at-law to Michael Martinez, and as the representative of Michael Martinez's estate. Michael Martinez died intestate, and there were no probate proceedings arising from his death as none were necessary. All of Michael Martinez's legal heirs are parties to this action.

7.    Defendant Southwestern Correctional, L.L.C. d/b/a LaSalle Corrections, L.L.C. ("LaSalle") is a domestic limited liability company. At all relevant times, Defendant Southwestern Correctional contracted with McLennan County to operate the Jack Harwell Detention Center and was acting under color of state law. It can be served with

process by serving its registered agent, Tim Kurpiewski, 26228 Ranch Road 12, Dripping Springs, Texas 78620.

8.   Defendant Michael Crittenden is an individual residing in Waco, McLennan County, Texas. At all relevant times, Crittenden was employed by Defendant Southwestern Correctional as a jailer and was acting under color of law. He can be served with process at his residence, 1162 Greenwood Lane, Waco, Texas 76705.

9.   Defendant Christopher Simpson is an individual residing in Waco, McLennan County, Texas. At all relevant times, Simpson was employed by Defendant Southwestern Correctional as a jailer and was acting under color of law. He can be served with process at his residence, 4164 N. Rock Creek Loop. Waco, Texas 76708.

10.  Defendant Milton Walker is an individual residing in Waco, McLennan County, Texas. At all relevant times, Walker was employed by Defendant Southwestern Correctional as a jailer and was acting under color of law. He can be served with process at his residence, 1210 Connally Street, Waco, Texas 76711.

## IV. FACTS

41.  Michael Martinez was born on September 21, 1990. On November 1, 2015, Michael took his own life while incarcerated at the Jack Harwell Detention Center in McLennan County, Texas.

42.  Southwest Correctional is a private corporation that incarcerates human beings for profit.

43.  On or about September 18, 2015, Michael attempted suicide by cutting both of his wrists while in the showers at the McLennan County Jail. On October 25, 2015, Michael was transferred to the Jack Harwell Detention Center. Upon his transfer, Michael's medical

records, including documentation of his prior suicide attempt, was forwarded by the McLennan County Jail to the Jack Harwell Detention Center and LaSalle.

44.    At the Jack Harwell Detention Center, Michael was not placed in the general population but rather was placed in Separation Unit N805, part of the "N-Wing," an area of the Jack Harwell Detention Center for inmates known to be potentially suicidal, mentally ill, or who have demonstrated bizarre behavior.

45.    Texas Commission on Jail Standards Rule 275.1 requires jailers to perform face-to-face observation of all inmates housed in such areas at least every 30 minutes and requires jailers to perform face-to-face observation of all other inmates no less than once every 60 minutes.

46.    Despite these minimum standards, no employee of the Jack Harwell Detention Center had face-to-face contact with Michael on November 1, 2015, from 2:05 a.m. until 5:35 a.m., when Michael was found dead, hanging in his cell from a bed sheet he had woven through the metal smoke detector cover in his cell.

47.    During those 3.5 hours, Defendants Crittenden, Simpson, and Walker were tasked with observing each inmate in the N-Wing, including Michael. Instead, they simply signed off on the prior count taken, a practice so common at the Jack Harwell Detention Center that the jailers had colloquially named the practice a "paper count."

48.    Despite not actually conducting headcounts, as was the practice of LaSalle officers – even in the portion of the jail where detainees known to be suicidal were housed – Defendants Crittenden, Simpson, and Walker each falsified records showing that they had conducted headcounts of the N-Wing at 30-minute intervals. Upon information and

belief, falsifying these records was a common practice at the Jack Harwell Detention Center.

49.     Crittenden, Simpson, and Walker were each indicted for falsifying government records for intentionally lying on the forms confirming they observed Michael in the hours before his death.

50.     Moreover, LaSalle routinely fails to train and supervise its employees at the jail regarding inmates' constitutional rights. In addition to the Defendants, numerous other jailers have been arrested for misconduct at the jail, including:

    a.  Sherry Lynn Haynes – for bringing contraband into the jail and giving it to inmates;

    b.  Regina Antoinnette Edwards – who pled guilty to having sex with an inmate;

    c.  Dorothy Pennington – who pled guilty to having sex with an inmate; and,

    d.  Melissa Suzanne Corona – who pled guilty to having sex with an inmate.

51.     Upon information and belief, other misconduct that has not resulted in arrest or indictment takes place at the Jack Harwell Detention Center.

52.     Despite his suicide attempt while in custody, less than two months prior to transfer to LaSalle's Jack Harwell Detention Center, at no point during his stay at the Jack Harwell Detention Center was Michael provided with any counseling or psychiatric care, or any medical care whatsoever. Upon information and belief, it was the practice and custom of LaSalle not to provide medical and psychiatric care to inmates in order to maximize profits for the company.

53.     There was also no video surveillance inside Michael's cell, requiring guards to make visual observations from the hallways to see the inmates. Because Crittenden, Simpson,

and Walker did not actually make visual observations from the hallway, pursuant to LaSalle's policy, practice, and custom, there was no observation of Michael at all for lengthy periods of time.

54.     Sadly, Michael was not the last person to commit suicide in the jail. Kristian Jesse Culver was found hanging in his cell on June 2, 2016 under circumstances similar to Michael, as yet another victim of LaSalle's failure to prevent inmate suicides.

55.     Investigators from the Texas Commission on Jail Standards have found the Jack Harwell Detention Center to be deficient on numerous occasions before and after Michael's death:

    a.   February 11, 2011 – Failure to observe inmates every 30 minutes as required;

    b.   June 30, 2011 – Failure to observe inmates every 30 minutes as required and failure to maintain adequate officer to inmate ratio;

    c.   December 29, 2011 – Failure to act on inmate sick calls;

    d.   January 5, 2012 – Employing unlicensed officers as guards;

    e.   February 6-7, 2012 – Failure to complete suicide intake screening forms upon intake and failure to train staff upon commencing employment;

    f.   November 5, 2015 – Jailers failed to observe inmates face-to-face every 30 minutes;

    g.   June 3, 2016 – Jailers failed to observe inmates at least once every 60 minutes.

56.     Failing to observe inmates every 30 minutes and otherwise failing to supervise inmates was a policy, practice, or custom that LaSalle had long employed at the Jack Harwell Detention Center. This policy, practice, or custom was the moving force that caused Michael's death.

## V. CAUSES OF ACTION

### A.  42 U.S.C § 1983 - FOURTEENTH AMENDMENT – PROTECTION FROM HARM AS TO ALL DEFENDANTS

57.     Defendants knew Michael Martinez was a suicide risk but did nothing to protect him from the risk of self-harm.

58.     Defendants knew that Michael Martinez had attempted suicide less than two months earlier by slitting his wrists. Despite that knowledge, Defendants did not provide him with any mental health services and placed him in a cell with the tools to commit suicide, namely a bedsheet that could be threaded and could support Michael's body, and a wire grate on the roof of the cell from which to hang it. These are well-known and obvious hazards for prisoners at risk of harming themselves.

59.     In addition, while there were surveillance cameras covering the hallways of the N-Wing, there were no surveillance cameras showing the cells themselves, thereby preventing Defendants from monitoring suicidal inmates like Michael Martinez.

60.     Despite minimum standards requiring that jailers have face-to-face observation with Michael at least every 30 minutes, Defendants Crittenden, Simpson, and Walker, all of whom were acting under cover of law, failed to monitor him for at least 3.5 hours. Defendants then falsified jail records to show that they had conducted observations that they had not actually conducted.

61.     This practice of failing to actually conduct a headcount but simply signing off on the prior jailer's headcount was so common at the Jack Harwell Detention Center that the jailers actually named the practice.

62.     These actions, practices, and customs were not only known (constructively or actually) to policymakers, they demonstrate that Defendant was deliberately indifferent not only to

the serious risk of harm posed to suicidal inmates generally but to Michael Martinez specifically.

63.     These actions, practices, and customs were the moving force of Michael Martinez's suicide and the deprivation of his civil rights.

**B. STATE LAW NEGLIGENCE AGAINST DEFENDANT LASALLE**

64.     In its contract with McLennan County, Defendant LaSalle agreed to operate and manage the Jack Harwell Detention Center in accordance with the standards promulgated by the Texas Commission on Jail Standards. Defendant LaSalle further agreed to adopt procedures and train employees as necessary to assure compliance with the standards promulgated by the Texas Commission on Jail Standards.

65.     Accordingly, Defendant LaSalle, by and through its employees, for which it is vicariously liable, owed Michael Martinez a duty to observe him face-to-face at least every 30 minutes, to house him in a cell to adequately protect him from self-harm, and to provide him minimum medical and psychiatric care to address his known mental health problems.

66.     In addition and in the alternative, Defendant LaSalle had a duty to maintain a safe premises for Michael Martinez, a licensee at all relevant times.

67.     Defendant breached these duties as follows:

        a.  Defendant, by and through its employees, failed to monitor Michael Martinez as required by the Texas Commission on Jail Standards;

        b.  Defendant, by and through its employees, provided Michael Martinez with the instrumentalities necessary to commit suicide;

c.  Defendant, by and through its employees, failed to provide Michael Martinez with mental health services or to refer him for such;

d.  Defendant, by and through its employees, housed Michael Martinez in a cell that was outside the view of all surveillance cameras;

e.  Defendant knew the cell was dangerous for Mr. Martinez yet failed to adequately warn or make the premises reasonably safe for Plaintiff.

f.  Defendant failed to adopt policies and procedures as necessary to assure compliance with the minimum standards promulgated by the Texas Commission on Jail Standards; and

g.  Defendant failed to train its employees as necessary to assure compliance with the standards promulgated by the Texas Commission on Jail Standards.

68.   Each of the foregoing breaches of duty proximately caused the death of Michael Martinez.

## VI. DAMAGES

69.   As a direct and proximate result of the Defendants' conduct, Plaintiffs, in their capacities as heirs-at-law and personal representatives of the Estate of Michael Martinez, assert a survival claim on behalf of the estate, which has incurred damages included, but not limited to, the following:

a.  Physical pain and suffering in the past;

b.  Mental anguish in the past; and

c.  Funeral and/or burial expenses.

70.     As a direct and proximate result of the Defendants' conduct, Plaintiffs, in their individual capacities, assert wrongful death claims, for which they have incurred damages including, but not limited to, the following:

   a.   Past and future pecuniary loss;

   b.   Past and future mental anguish;

   c.   Past and future loss of companionship, support, society, services, and affection of Michael Martinez; and

   d.   Loss of inheritance.

## VII. PUNITIVE DAMAGES

71.     Defendants conduct was malicious, oppressive, and/or in reckless disregard of Michael Martinez's constitutional rights. Plaintiffs accordingly seek punitive damages.

## VIII. ATTORNEY FEES

72.     Plaintiffs incorporate by reference all the above related paragraphs, as if fully set forth herein.

73.     It was necessary for Plaintiffs to retain the undersigned attorneys to file this lawsuit. Upon judgment, Plaintiffs are entitled to an award of attorney fees and costs pursuant to 42 U.S.C. §1988.

## IX. JURY DEMAND

74.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial.

## PRAYER

   WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray for judgment against Defendants and request an order including but not limited to the following relief:

   a.   An award of compensatory damages against Defendants;

b.  An award of punitive damages against Defendants;

c.  An order declaring Plaintiffs as prevailing party so that Defendant will be required to pay or reimburse Plaintiffs for all costs of preparation and trial of this cause of action, including, but not limited to, filing fees, costs of representation, attorney fees, and expert witness fees, incurred by them up to and through trial, and for its appeal if required;

d.  Pre- and post-judgment interest at the highest rate available under the law; and

e.  Such other relief as the Court may deem just and proper in law or in equity.


Respectfully submitted,

EDWARDS LAW
The Haehnel Building
1101 East 11th Street
Austin, Texas 78702
Tel.    512-623-7727
Fax.    512-623-7729

By      /s/ Jeff Edwards
JEFF EDWARDS
State Bar No. 24014406
Scott Medlock
State Bar No. 24044783

LAW OFFICES OF ZIMMERMAN, ZIMMERMAN,
COTNER, LEJEUNE & RESSETAR
A Professional Corporation
3501 W. Waco Drive
Waco, Texas  76710
(254) 752-9688
(254) 752-9680 (fax)

 /s/ Christopher Bennett
CHRISTOPHER BENNETT
State Bar No.24069367
cbennett@zlawhelp.com

ATTORNEYS FOR PLAINTIFF