IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| SALVADOR MARTINEZ and GLORIA MARTINEZ, Individually and as personal Representatives of the ESTATE OF MICHAEL MARTINEZ, | § § § § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:17-cv-9 |
| | § | |
| SOUTHWESTERN CORRECTIONAL, L.L.C. d/b/a LASALLE CORRECTIONS, L.L.C., MICHAEL CRITTENDEN, CHRISTOPHER SIMPSON, and MILTON WALKER, | § § § § § | |
| Defendants. | § | |

## <u>SOUTHWESTERN CORRECTIONAL, L.L.C. d/b/a LASALLE CORRECTIONS, L.L.C.'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL AND DEFENDANT LASALLE'S MOTION FOR PROTECTION</u>

SOUTHWESTERN CORRECTIONAL, L.L.C. d/b/a LASALLE CORRECTIONS, L.L.C.

("LaSalle") files its Response to Plaintiffs' Motion to Compel Responses to Initial Discovery

Requests and will respectfully demonstrate that this Court should deny Plaintiffs' motion.

## I. INTRODUCTION

Michael Martinez, Plaintiffs' adult son, was detained in the Jack Harwell Detention

Center ("JHDC") in McLennan County, Texas and committed suicide on November 1, 2015.

Plaintiffs filed suit on January 11, 2017, alleging that LaSalle violated Section 1983 and is

vicariously liable for common-law negligence for the acts of Michael Crittenden, Christopher

Simpson, and Milton Walker (the "Individual Defendants"). (Doc. 1, ¶¶ 57–68).

Plaintiffs served Interrogatories, Requests for Production, and Requests for Admission.

LaSalle produced relevant documents from the JHDC, and also propounded multiple objections

based in large part on the overbreadth and irrelevance of various requests into areas wholly

unrelated to the allegations in this suit. LaSalle also objected that the sheer volume of the amount of material sought by Plaintiffs was unduly burdensome and not proportional to the issues in this case. Plaintiffs filed a motion to compel discovery responses. (Doc. 54). The day the motion was filed, LaSalle served its second objections and supplemental responses. La Salle will produce third supplemental objections and responses in the next week or so.

The fundamental issue underlying the motion to compel is not LaSalle's alleged—but justified—refusal to answer many requests and interrogatories, but rather the impropriety of many of Plaintiffs' requests. As phrased, Plaintiffs sought an extraordinary amount of documents and information, which will require significant time and expenditure to respond by both LaSalle and defense counsel. Plaintiffs take more issue with LaSalle's objections than with explaining why they seek so much information unrelated to the allegation that LaSalle allegedly failed to protect a suicidal detainee at jail in Waco. In fact, Plaintiffs discuss very few specific requests in their motion.

The issues in the lawsuit are based on Martinez's suicide and the acts of the Individual Defendants in allegedly falsifying the log in the area of the jail where Martinez was detained (for which they were immediately terminated). Yet Plaintiffs seek *every* document from *all* LaSalle facilities in Texas and Louisiana (a total of 17 facilities, although some have since closed) for every inmate death, regardless of the cause of death; all documents where an employee was accused of violating a rule of the Texas Commission on Jail Standards ("TCJS"); and every document pertaining to policies and "communications" for the "observation" of all detainees, specifically requesting this information for all inmates that *do not* pose a risk of suicide.

In short, Plaintiffs want access to much more information than they are entitled to under the federal rules and are forcing LaSalle to contest patently overbroad discovery. Most requests

are nothing more than fishing expeditions. There have been multiple attempts to narrow the type of documents that Plaintiffs would settle for at this point. Unfortunately the "narrowed" requests are still unduly burdensome because LaSalle's files are not maintained in a manner where the documents and information can easily be accessed. And, many of Plaintiffs' complaints in their motion are now questionable in light of the narrowed requests.

## II.  APPLICABLE LAW

LaSalle served responses and produced many documents with two supplements. The Federal Rules of Civil Procedure "vest[] the trial judge with broad discretion to tailor discovery narrowly." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *see also Avance v. Kerr-McGee Chem. LLC*, No. 5:04CV209, 2005 WL 5315658, at *2 (E.D. Tex. July 1, 2005) (citing *Eastway Gen. Hosp. v. Eastway Women's Clinic, Inc*., 737 F.2d 503, 505 (5th Cir. 1984), *cert. denied*, 470 U.S. 1052 (1985)).

Courts can limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefits." FED. R. CIV. P. 26(b)(1). In weighing the benefits and burdens of the requested discovery, a court must "tak[e] into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Avance*, 2005 WL 5315658, at *2. The Court is required to limit discovery where:

(i)  the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii)  the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii)  the proposed discovery is outside the scope permitted by Rule 26(b)(1).

FED. R. CIV. P. 26(b)(2)(C)(i)–(iii); *see also* LOC. R. CV-26(c) (permitting entry of protective order for discovery issues upon showing of good cause).

### A. Discovery requests that seek irrelevant evidence are improper.

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party "and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1); *Avance*, 2005 WL 5315658, at *2; *In re Bard IVC Filters Prod. Liab. Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016). "While the Supreme Court has mandated that FED. R. CIV. P. 26(b)(1) be construed broadly ..., courts should not allow parties to 'roam in the shadow zones of relevancy to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" *Boyd v. Am. Airlines, Inc.*, No. 3-01-CV-2230-D, 2002 WL 32360294, at *1–2 (N.D. Tex. Oct. 17, 2002) (quoting *Spina v. Our Lady of Mercy Med. Ctr.*, No. 97-CIV-4661(RCC), 2001 WL 630481, at *2 (S.D.N.Y. June 7, 2001)); *Don Stevenson Design, Inc. v. TBP Enters. I, Ltd.*, No. 5:16-CV-01128-RCL, 2018 WL 6704466, at *3 (W.D. Tex. Dec. 19, 2018) (noting that plaintiff not "permitted to go fishing" with discovery requests).

The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." *E.E.O.C. v. Woodmen of the World Life Ins. Soc'y*, No. 8:03CV165, 2007 WL 1217919, at *1 (D. Neb. Mar. 15, 2007) (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1993)). "Mere speculation that information might be useful will not suffice." *Id.* (citing *Cervantes v. Time, Inc.*, 464 F.2d 986, 994 (8th Cir. 1972)); *Don Stevenson Design, Inc.*, 2018 WL 6704466, at *3 (noting that plaintiff not "permitted to go fishing" by use of discovery requests).

In this Section 1983 case, ***Plaintiffs must make a threshold showing*** that the information requested would be ***relevant*** to the issues at hand: Whether LaSalle "gained actual knowledge of

a substantial risk of suicide and responded with deliberate indifference," *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th. Cir. 1996) (en banc), and whether an official policy or custom of LaSalle caused Martinez to be deprived of a federally-protected right, *Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). And proof of a policy or custom require a plaintiffs to establish "similarity and specificity" between the prior acts they seek to use and the alleged act in the underlying case. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009). While *Hare* and *Peterson* discuss burden of proof, the fact remains that Plaintiffs rarely explain why they need such overly broad discovery for dissimilar incident.

Relying on *Heller v. City of Dallas*, Plaintiffs assert that Defendant's objections should be overruled "as improperly asserted." (Doc. 54 pp. 3–4). But, even if this Court were to find that Defendant's original objections were not sufficiently specific, which Defendant denies, *Heller* does not preclude supporting arguments for the original objections. To the contrary, Plaintiffs ignore that the court in *Heller* permitted—and even relied on—the briefing and oral argument of the responding party to sustain some of the discovery objections and, as a result, decline sanctions for them. 303 F.R.D. at 472, 491; *see Latham v. Polaris Indus., Inc.*, No. 3:15-CV-1209-B, 2016 WL 7395346, at *4–5 (N.D. Tex. May 16, 2016) (sustaining undue burden objections, as outlined in affidavit, due to more than 150 hours already spent in responding to plaintiff's discovery requests and due to incredible amount of time required for complete response to plaintiff's request for documents covering 18 years and many different models of vehicles, unrelated to vehicle involved in accident). This Court even instructed Defendant to provide evidence of undue burden and proportionality, which it has (Ex. A–C).

As described in Section III below, in response the requests addressed in Plaintiffs' motion, many discovery requests, as written, seek evidence utterly unrelated to the issues in this

case. Plaintiffs failed to make the required "threshold showing of relevance" to overcome Defendant's objections. *See E.E.O.C.*, 2007 WL 1217919, at *1. Indeed, the only relevance arguments made by Plaintiffs are sweeping relevance claims relating to their broad requests for discovery of prior incidents. Most of these incidents have nothing to do with the facts alleged.

**B.      Overbroad discovery requests are improper and unduly burdensome.**

An overbroad discovery request is prohibited, as it is merely a fishing expedition into the other party's files. *See Doe v. Nebraska*, 788 F. Supp. 2d 975, 982–83 (D. Neb. 2011) ("The unfettered nature of these requests appears to be a fishing expedition."); *MacLean v. McCarroll*, No. 4:08-CV-059, 2009 WL 1586680, at *2 (E.D. Tex. June 5, 2009) ("Courts have also recognized that the legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery.") (internal quotation marks omitted); *see also* FED. R. CIV. P. 26(b)(1) (scope of discovery must be "proportional" to the needs of the case); *Don Stevenson Design*, 2018 WL 6704466, at *3 (party not "permitted to go fishing" with discovery requests).

When parties make requests with no temporal, locality, or other restriction, courts tend to deny the requests as overbroad or unduly burdensome. *Gould, Inc. v. CNA*, 809 F. Supp. 328, 339–40 (M.D. Pa. 1992), *aff'd*, 5 F.3d 1489 (3d Cir. 1993); *see also WWP, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032, 1038–39 (8th Cir. 2011) (upholding district court's determination that request seeking all documents without regard to source or location was overly broad); FED. R. CIV. P. 26(b)(1), 26(b)(2)(B) (responding party need not produce ESI that is "not reasonably accessible"); *cf. Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 306 (6th Cir. 2007) (finding that compliance would be unduly burdensome where record reflected that search for responsive documents took approximately two weeks and over 180 hours of labor); *Latham*,

2016 WL 7395346, at *4–5 (sustaining defendant's undue burden objections, outlined in affidavit, because burden outweighs "likely benefits"). Here, we are talking weeks and months to locate many of the documents and data requested (Ex. A–C).

The initial discovery requests sought information from 2001 to the present for every facility operated by LaSalle nationwide and all documents related to any inmate death for any reason. After various discussions, Plaintiff's counsel offered to narrow some of the requests (Ex. D). Even with the narrowed scope, many requests are still unduly burdensome and not proportional to the allegations in this suit.

### 1. Plaintiff's requests must be limited in time.

Plaintiffs offered to limit the temporal scope to 10 years prior to the date of the incident, or November 1, 2005, until the date suit was filed, or January 11, 2017, except for documents from the JHDC which would be continuing. Initially, Plaintiffs sought information from 2001 to the present. These requests are still temporally overbroad. The requests cover a 12-year period.

In addressing objections to temporally-overbroad discovery requests in Section 1983 cases, requests for records from five years prior to the incident underlying the lawsuit have been found be appropriate. *Williams v. City of Birmingham*, 323 F. Supp. 3d 1324, 1337 (N.D. Ala. 2018) (limiting requests to incidents in past five years because of broad scope of the request—all documentation for all incidents involving any city police officer); *Diaz v. Devlin*, No. 4:16-CV-40039-TSH, 2018 WL 1610541, at *3 (D. Mass. Apr. 3, 2018) (limiting period for responsive documents to five years before incident in *Monell* claim where plaintiff requested all documents or communications concerning any allegation or complaint against any defendant). Documents created after the incident are not discoverable. *See Gould, Inc.*, 809 F. Supp. at 339–40

(documents created after relevant time are not relevant, and therefore, not discoverable). Still, even limiting some requests to five years will not cure the undue burden issues.

## 2. Requests must be limited in scope to address a specific facility.

LaSalle also asserted that Plaintiffs' requests are overbroad in scope in that they initially sought documents from **all** facilities nationwide operated by LaSalle, not just from the JHDC. After sharing a list of all LaSalle-operated facilities, Plaintiffs offered to limit the geographic scope to jails in the Fifth Circuit, which includes eight (8) facilities in Texas and nine (9) facilities in Louisiana between 2005 and 2017.[1] Records for county inmates at the Texas facilities are records owned by the respective county and cannot be released absent approval from the arresting agency (Ex. A, ¶ 4).

As explained more fully below, this significantly multiplies the amount of files that need to be reviewed to locate potentially responsive documents. Moreover, the Louisiana facilities are operated by different companies and operate under different rules and regulations than those imposed by the Texas Commission of Jail Standards (Ex. B, ¶9); *see* LA. ADMIN. CODE tit. 22 (2019). Likewise, the Louisiana facilities are operated by completely separate companies (Ex. B, ¶¶ 3–6). Thus Defendant has no control over any documents from Louisiana. And, many facilities in Louisiana were managed by LaSalle-affiliated entities, but staffed with employees of the respective Sheriff's offices (Ex. B, ¶¶ 4–6). Defendant cannot compel any of these Sheriffs to produce any information owned by a Louisiana governmental entity (Ex. B, ¶ 6). This alone should be enough to deny the request for Louisiana documents and data.

When requests are not sufficiently tailored to address the proper locality, courts tend to deny the requests as overbroad or unduly burdensome. *Gould, Inc.*, 809 F. Supp. at 339–40 (documents regarding other facilities are not relevant, and therefore, not discoverable). One

---

[1] LaSalle also operates facilities in Arizona, Georgia, and New Mexico.

district court held that "plaintiff's request for names, addresses, booking photographs for anyone held in defendant's custody in ... any of defendant's other facilities where inmates are held ... is overbroad and would be so burdensome as to constitute harassment." *Dearwester v. Sacramento Cty. Sheriff's Dep't*, No. 2:13-cv-2064, 2016 WL 1377134, at *2–3 (E.D. Cal. 2016); *see also Riley v. Walgreen Co.*, 233 F.R.D. 496, 500 (S.D. Tex. 2005) (limiting discovery requests only to store where incident occurred). So, too, do many of Plaintiffs' requests.

In another Texas lawsuit where the plaintiff sought damages for exposure to chemicals at one of defendant's facilities, but requested records from defendant's other facilities as well, the district court reached an analogous outcome. *Avance*, 2005 WL 5315658, at *2. The *Avance* court granted the defendant's motion for protective order because: (1) information about other facilities was irrelevant to the issues involved in the case; and (2) the requests were overbroad. *Id.* at *3. The court found that placing every facility at issue in the case would result in significant expense for the parties and confusion for the jury. *Id.* Any marginal relevance of the information would be outweighed by the burden and expense of the proposed discovery. *Id.* These holdings apply equally here. The discovery should be confined to JHDC materials.

### 3. Requests must be limited in scope to address the matter at issue.

The issue here is Martinez's suicide while in protective custody and the failure of three correctional officers to follow JHDC policy for checking detainees in that area.[2] The subject matter of the information produced should likewise be limited. *See Marcum v. Scioto Cnty., Ohio*, No. 1:10-cv-790, 2012 WL 2018523, at *6 (S.D. Ohio June 5, 2012) (limiting production to medical care at issue—asthma); *McEvoy v. Hillsborough Cnty.*, No. 09-cv-431, 2011 WL 1813014, at *4–5 (D.N.H. May 5, 2011) (limiting production to medical care at issue—

---

[2] On the issue of liability, the failure to follow a policy, standing alone, is insufficient to impose Section 1983 liability on LaSalle. *See Posey v. Sw. Bell Tel. L.P.*, 430 F. Supp. 2d 616, 627 (N.D. Tex. 2006).

detoxification); *Conboy v. Edward D. Jones & Co., L.P.*, 140 F. App'x 510, 516–17 (5th Cir. 2005) (upholding district court's denial of production of *all* employment applications for three years preceding incident); *Thornhill v. Cox*, 113 F. App'x 179, 182 (7th Cir. 2004) (district court did not abuse discretion in denying motion to compel because plaintiff did not limit request to alleged knee condition).

Here, Plaintiffs have made no real attempt to limit their initial discovery to the subject matter, time, and facility involved in this case. Their requests served solely to harass LaSalle by fishing for information. Plaintiffs still seek a wealth of information over a 12-year period and from all facilities that LaSalle operates in Texas and Louisiana that is unrelated to suicides or to detainees that are at risk of suicide, as Plaintiffs allege. The state of Louisiana oversees its facilities under different rules. *See* LA. ADMIN. CODE tit. 22 (2019).

Plaintiffs' requests are not sufficiently limited in scope, not limited to information relevant to their claims and also impose an undue burden on LaSalle. *Cf. Surles*, 474 F.3d at 306 (finding that compliance would be unduly burdensome where record reflected that search for responsive documents took approximately two weeks and over 180 hours of labor); *Latham*, 2016 WL 7395346, at *4–5 (sustaining defendant's undue burden objections, outlined in affidavit, because burden outweighs "likely benefits"). (*See* Declarations of Jay Eason, Kevin Sumrall and Shawn Clark, attached Exhibits A–C).[3]

Such an abuse of discovery is not tolerated by the federal rules. As described in Section III below, in response to each request to which Plaintiffs now seek compelled responses, many of Plaintiffs' discovery requests, even as narrowed, are well beyond the scope of permissible discovery, seeking evidence that is not relevant to the issues in this case. More importantly, as

---

[3]     These Declarations and the exhibits thereto are incorporated by reference as if set forth fully herein.

noted, Plaintiffs have not made the required "threshold showing of relevance" to overcome Defendant's objections. *See E.E.O.C.*, 2007 WL 1217919, at *1; Fed. R. Civ. P. 26(b)(1).

### C. Motion for Protective Order

For good cause, this Court can then enter a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); Loc. R. CV-26(c) (permitting entry of protective order for discovery issues upon showing of good cause). The good cause showing to obtain a protective order imposes the burden "'on the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *Avance*, 2005 WL 5315658, at *2 (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). Due to the burden that would be imposed by requiring complete responses to Plaintiffs' overbroad and irrelevant discovery requests and the resulting impact on the staff at the Texas and Louisiana facilities as well as the increased legal fees, LaSalle now requests such an order.

## III. ARGUMENT

### A. Plaintiffs' Motion to Compel answers to Interrogatories should be denied.

LaSalle asserted multiple objections to Plaintiffs' overbroad and unduly burdensome interrogatories. Plaintiffs' Motion to Compel complains of these objections and requests the Court to compel additional responses. Again, Plaintiffs focus on the objections with hypertechnical arguments that the objections are impermissible. But, the poorly-worded and overly broad requests are, in fact, the origin of this dispute. Plaintiffs also ignore the fact that the Rules impose an ongoing duty to supplement. *See* Fed. R. Civ. P. 26(e)(1).

**Interrogatory No. 1:** Plaintiffs request a "detailed description of the issues and facts that each person has knowledge of." LaSalle identified such persons in its initial disclosures, and

its answer incorporates those disclosures. A "detailed description" of what each person knows is not required by Rule 26. Further, the request for multiple narratives is beyond the scope of a single interrogatory. LaSalle asks the Court to sustain its objections that this interrogatory is improper as overly broad because it requests a response beyond the scope of what is permissible under the rules. *See* FED. R. CIV. P. 26(b)(1); *Gould*, 809 F. Supp. at 339–40.

**Interrogatory No. 2:** Plaintiffs request identification of any other person or legal entity that may be liable and a "detailed description" of the bases of that liability. To date, LaSalle has not identified any other party. Should such a party be identified in the future, LaSalle will supplement, but no "detailed description" of liability should be required. LaSalle asks the Court to sustain its objections that this request is improper as overly broad because it requests a response beyond the scope of what is permissible under the rules. *See* FED. R. CIV. P. 26(b)(1); *Gould*, 809 F. Supp. at 339–40.

**Interrogatory No. 4:** Plaintiffs request LaSalle to "identify and provide a detailed description of the substance of ***every communication and document***" that relates to this lawsuit (emphasis added.) This is overbroad and unduly burdensome on its face. LaSalle cannot possibly respond fully to this request. A "communication" includes a conversation in passing between two people, for example. LOC. R. CV-26(b)(1) ("The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).") Given this definition, LaSalle cannot possibly provide a "detailed description" of every communication that may have mentioned Martinez or his suicide. This request is unduly burdensome. *Cf. Surles*, 474 F.3d at 306; *Latham*, 2016 WL 7395346, at *4–5 (sustaining defendant's undue burden objections, outlined in affidavit, because burden outweighs "likely benefits"). (*See* Ex. A–B). It is also overbroad and would more appropriately be addressed by way of deposition.

Plaintiffs seem to have agreed to limit the request to "identify all communications that [LaSalle] is aware of," but then they request that LaSalle "describe [the identified communication] to the best recollection of the participants" (Ex. D). To the extent that there may have been oral communications about Martinez's death in 2015, between LaSalle employees, there is no possible way to describe these communications at this late date.

Even if this interrogatory were limited to written communications only, it is still overbroad. It would also be unduly burdensome to require "detailed descriptions" of each document, as the written documents would speak for themselves, assuming any exist. Further, and more significantly, as drafted, the question seeks communications that are protected by attorney-client privilege and work product. Plaintiffs requested a privilege log, but such a log is required for tangible things being withheld due to a claimed privilege, not to address information that any individual possesses that would be covered by a privilege. *See* FED. R. CIV. P. 26(b)(5).

LaSalle produced documents in response to this request, *see* FED. R. CIV. P. 33(d), but asks the Court to sustain its objections that this interrogatory is overbroad and unduly burdensome as drafted. *See* FED. R. CIV. P. 26(b)(2)(C)(i)–(iii); *Gould*, 809 F. Supp. at 339–40; *see also Doe*, 788 F. Supp. 2d at 982–83; *Avance*, 2005 WL 5315658, at *2.

**Interrogatory No. 5:** Plaintiffs request LaSalle to "identify and describe in detail all laws, statutes, regulations, policies, procedures, training, meetings, documents, and oral and written communications" relating to suicide prevention and "in place" while LaSalle operated the JHDC. The request is overbroad and unduly burdensome on its face. LaSalle cannot possibly respond fully to this request. Any description of such documents would also be unduly burdensome, as the written documents would speak for themselves, assuming any exist. LaSalle

produced all applicable JHDC policies and the Health Services Plan in response to this interrogatory.  *See* FED. R. CIV. P. 33(d).

And the applicable laws, statutes, and regulations are equally available to Plaintiffs—they did file suit under 42 U.S.C. § 1983, after all.  This request calls for LaSalle's legal opinions and for information that would be protected under the work-product doctrine.  Plaintiffs requested a privilege log, but such a log is only required for tangible things being withheld due to a claimed privilege, not to address information that any individual possesses that would be covered by a privilege.  *See* FED. R. CIV. P. 26(b)(5).  This Court should sustain the objections that no further response is required.  *See* FED. R. CIV. P. 26(b)(1), (b)(2)(C)(i); *Gould*, 809 F. Supp. at 339–40; *Doe*, 788 F. Supp. 2d at 982–83.

**Interrogatory No. 6**:  Plaintiffs request LaSalle to "[d]escribe in detail how mentally ill inmates and potentially suicidal inmates were monitored" at the JHDC in 2015.  The TCJS standards and requirements for detention centers are equally available to Plaintiffs.  Further, all regulations imposed on detention facilities fundamentally involve "monitoring" inmates.

This far exceeds the scope of permissible discovery under the rules and constitutes a fishing expedition.  This question is unduly burdensome, overbroad and would more appropriately be addressed by way of deposition.  LaSalle produced the applicable JHDC policies in response to this interrogatory.  *See* FED. R. CIV. P. 33(d).  LaSalle asks the Court to sustain its objections that responding to this interrogatory as written is unduly burdensome.  *See* FED. R. CIV. P. 26(b)(2)(C)(i)–(iii); *Gould*, 809 F. Supp. at 339–40; *see also Doe*, 788 F. Supp. 2d at 982–83; *Avance*, 2005 WL 5315658, at *2.

**Interrogatory No. 7**:  Plaintiffs request LaSalle to "describe in detail ***any events*** (including, but not limited to, completed and attempted suicides) ***at any facility*** operated by you

involving suicidal inmates since January 1, 2001 that have resulted in the inmates' deaths or injuries requiring medical attention beyond first aid" (emphasis added). As noted above, Plaintiffs offered to limit the geographic scope to Texas and Louisiana and the temporal scope of the requests to between November 2005 and January 2017, other than for the JHDC. Plaintiffs then agreed to limit the scope to "attempted suicide incidents that required off-site medical attention" (Ex. D).

Nevertheless, this interrogatory still exceeds the scope of permissible discovery. It is not properly limited in scope in that it seeks information over a 12-year period and across all Texas and Louisiana facilities operated by LaSalle, neither of which are properly tailored to seek admissible evidence. Responding to this request would also be unduly burdensome. *Cf. Surles*, 474 F.3d at 306 (finding that compliance would be unduly burdensome where the record reflected that the search for responsive documents took approximately two weeks and over 180 hours of labor); *Latham*, 2016 WL 7395346, at *4–5 (sustaining defendant's undue burden objections, outlined in affidavit, because burden outweighs "likely benefits"). (*See* Ex. A, ¶¶ 4–5; Ex. B, ¶¶ 7–11).

LaSalle asks the Court to sustain its objections that this interrogatory is overbroad and unduly burdensome. *See* FED. R. CIV. P. 26(b)(2)(C)(i)–(iii); *Gould*, 809 F. Supp. at 339–40; *see also Williams*, 323 F. Supp. 3d at 1337; *Doe*, 788 F. Supp. 2d at 982–83; *Riley*, 233 F.R.D. at 500; *Diaz*, 2018 WL 1610541, at *3; *Dearwester*, 2016 WL 1377134, at *2–3; *Avance*, 2005 WL 5315658, at *2.

LaSalle also asks that the Court sustain its objections to this request on grounds that it violates the privacy and protected interests of third parties. *See* Health Insurance Portability and Accountability Act (HIPAA) of 1996, Pub. L. No. 104–191, 110 Stat. 1936 (1996), *as adopted in*

*the federal regulations in* 45 C.F.R. Parts 160, 162, and 164; 42 U.S.C. § 1320d–6 (addressing offense, and associated penalties, relating to wrongful disclosure of individually identifiable health information to third parties); *see also U.S. v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980) (medical records "well within the ambit of materials entitled to privacy protection"). The wholesale production of information concerning attempted suicides—an act of questionable relevance anyway—will potentially reveal highly-private, mental-health issues of the detainees who attempted suicide. Notwithstanding the Protective Order in place, Plaintiffs failed to show how these third-party intrusions are relevant to their claims.

**Interrogatory No. 8:** Plaintiffs request LaSalle to "describe in detail all complaints made against any of the officers" named in the lawsuit. Plaintiffs fail to define the type of "complaints." A "complaint" could be an insult hurled at an officer by an angry detainee or a frustrated colleague or a conversation in passing or a critique by a supervisor. LaSalle cannot possibly provide a detailed description of every oral "complaint" against the Individual Defendants.

Moreover, this request seems to include the entire time frame that these officers were employed with no attempt to limit it in time. Even if it were limited to written complaints only, this interrogatory is still overbroad for its failure to limit the scope of time and the nature of the "complaints." LaSalle produced the *complete* personnel files for the three named officers (with certain identifying and family information redacted with advance notice to Plaintiffs' counsel). *See* FED. R. CIV. P. 33(d). LaSalle now asks the Court to sustain its objections that no further response to this interrogatory as written is required because the interrogatory is overbroad and unduly burdensome. *See* FED. R. CIV. P. 26(b)(2)(C)(i)–(iii); *Williams*, 323 F. Supp. 3d at 1337; *Diaz*, 2018 WL 1610541, at *3; *see also Gould*, 809 F. Supp. at 339–40.

**Interrogatory No. 9:** Plaintiffs request LaSalle to identify "all persons disciplined concerning Martinez's death, if any, and [the] reasons for imposing such disciplinary action." LaSalle produced the personnel files for the Individual Defendants showing that they were terminated. *See* FED. R. CIV. P. 33(d). Due to the fact that these officers have been indicted, Plaintiffs have equal access to the filings in the criminal proceedings. *See* FED. R. CIV. P. 26(b)(2)(C)(i). LaSalle asks the Court to sustain its objections because it fully answered this Interrogatory under Rule 33. *See id.*

**Interrogatory No. 10:** Plaintiffs request LaSalle to "identify every individual who had contact with Martinez while he was incarcerated." This request is patently overbroad. LaSalle could not possibly provide a complete answer. Contact is not described, but easily includes everyone who saw or spoke to Martinez while he was at the JHDC. Any correctional officers or detainee who walked through the detention center could have had "contact" with Martinez.

LaSalle produced investigative statements, Martinez's classification and medical files, a list of persons with knowledge of the facts (based on the records produced), and Martinez's cell movement logs. *See* FED. R. CIV. P. 33(d). LaSalle asks the Court to sustain its objections that no further response to this interrogatory as written is required because it is overbroad, vague, and unduly burdensome. *See* FED. R. CIV. P. 26(b)(2)(C)(i)–(iii); *Gould*, 809 F. Supp. at 339–40; *see also Doe*, 788 F. Supp. 2d at 982–83; *Riley*, 233 F.R.D. at 500; *Dearwester*, 2016 WL 1377134, at *2–3; *Avance*, 2005 WL 5315658, at *2.

**Interrogatory No. 11:** Plaintiffs request: "For the period ***January 1, 2001 to the present***, identify ***all inmate deaths*** (not including those identified in interrogatory 7) that occurred ***at any facility*** operated by you" (emphasis added). As noted above, Plaintiffs offered

to limit the geographic scope to Texas and Louisiana and the temporal scope of the requests to between November 2005 and January 2017, other than for the JHDC.

This interrogatory still exceeds the scope of what is permissible. It is not properly limited in scope. It seeks information over a 12-year period and across all Texas and Louisiana facilities operated by LaSalle, neither of which are properly tailored to seek admissible evidence. Further, it seeks information far beyond the scope of what is discoverable in a case arising from a suicide. Information regarding inmates who died of cardiac arrest, a terminal disease, or foul play is not relevant to Plaintiffs' claims, but a complete response to the interrogatory as worded would require information regarding every death in custody regardless of the cause of death. Moreover, Plaintiffs can access this information through the Death in Custody reports from the Office of the Attorney General for the State of Texas. These reports are not generated by LaSalle.

LaSalle asks the Court to sustain its objections that this interrogatory is overbroad and unduly burdensome. *See* FED. R. CIV. P. 26(b)(2)(C)(i)–(iii); *Gould*, 809 F. Supp. at 339–40; *see also Williams*, 323 F. Supp. 3d at 1337; *Doe*, 788 F. Supp. 2d at 982–83; *Riley*, 233 F.R.D. at 500; *Diaz*, 2018 WL 1610541, at *3; *Dearwester*, 2016 WL 1377134, at *2–3; *Marcum*, 2012 WL 2018523, at *6; *McEvoy*, 2011 WL 1813014, at *4–5; *Avance*, 2005 WL 5315658, at *2.

LaSalle also asks that the Court sustain its objections to this request on grounds that it seeks to violate the privacy and protected interest of third parties. *See* Health Insurance Portability and Accountability Act (HIPAA) of 1996, Pub. L. No. 104–191, 110 Stat. 1936 (1996), *as adopted in the federal regulations in* 45 C.F.R. Parts 160, 162, and 164; 42 U.S.C. § 1320d–6 (addressing offense, and associated penalties, relating to wrongful disclosure of individually identifiable health information to third parties); *see also Westinghouse Elec. Corp.*, 638 F.2d at 577 (medical records "well within the ambit of materials entitled to privacy

protection"). Notwithstanding the Protective Order in place, Plaintiffs failed to show how this third-party information is relevant to their claims to justify such an intrusion.

**Interrogatory No. 12:** Plaintiffs request LaSalle to "describe in detail any suicide prevention training provided to personnel" at the JHDC from the time it began operations through the present. This is unduly burdensome, overbroad, and would more appropriately be addressed by way of deposition. And "training" is not defined, but it could reasonably include any one-on-one conversation between correctional officers about suicide prevention. LaSalle cannot possibly provide a description of every such conversation or verbal "training," and a detailed description should not be required in any event. It is also not reasonably limited in time, as anything after November 2015 would not be within the scope of discovery. *See Gould*, 809 F. Supp. at 339–40 (documents created after relevant time are not relevant, and therefore, not discoverable). LaSalle asks the Court to sustain its objections that this interrogatory is overbroad and unduly burdensome. *See* FED. R. CIV. P. 26(b)(2)(C)(i)–(iii); *Williams*, 323 F. Supp. 3d at 1337; *Diaz*, 2018 WL 1610541, at *3.

**Interrogatory No. 13:** Plaintiffs request LaSalle to "[i]dentify all steps you took to protect Michael Martinez from suicide." LaSalle objected based on the vagueness of the term "steps" and the inherent assumption that it presumed knowledge of Martinez's suicidal ideations. LaSalle supplemented its response to this Interrogatory, with information including screening results, the Continuity of Care Query ("CCQ") inquiry to the county, and the Inmate Mental Condition Report to Magistrate that was also sent to the county. *See* TEX. CODE CRIM. PROC. art. 16.22. LaSalle also produced these documents, which included Martinez's entire classification file and medical file from the JHDC. *See* FED. R. CIV. P. 33(d). LaSalle asks the Court to sustain its objections that no further response to this interrogatory as written is required because

it is overbroad and vague.  *See* FED. R. CIV. P. 26(b)(2)(C); *Doe*, 788 F. Supp. 2d at 982–83; *see also Gould*, 809 F. Supp. at 339–40.

**Interrogatory No. 14:**  Plaintiffs requested LaSalle to "[i]dentify all persons involved in placing Michael Martinez in every cell he occupied from October 25, 2015 to November 1, 2015 and describe in detail the basis for each placement."  LaSalle produced the cell movement logs and statements that discussed Martinez's movements.  *See* FED. R. CIV. P. 33(d).  The request for a detailed description about each placement is unduly burdensome and would more appropriately be addressed by way of deposition.  LaSalle asks the Court to sustain its objections that no further response to this interrogatory as written is required because the interrogatory is overbroad.  *See* FED. R. CIV. P. 26(b)(2)(C); *Doe*, 788 F. Supp. 2d at 982–83; *see also Gould*, 809 F. Supp. at 339–40.

**Interrogatory No. 15:**  Plaintiffs request LaSalle to "[i]dentify ***each instance*** since you took over operations of the Jack Harwell Detention Center where jailers at the Jack Harwell Detention Center were cited for failing to comply with ***any rule*** of the Texas Commission on Jail Standards" (emphasis added).  This request is overbroad on its face because there are many TCJS rules that have no bearing on this case and, therefore, failing to comply with those rules would be wholly irrelevant to Plaintiffs' claims.  Plaintiffs then tried to narrow the information sought by winnowing down TCJS rules that they contend have no impact on their case (Ex. D).  This does not change the undue burden problem, at all.  To determine if jailers were internally disciplined for failure to comply with TCJS rules would require a search of every personnel file at JHDC from June 2013 to the present, which is unduly burdensome and not proportional to the needs of the case.  *See* FED. R. CIV. P. 26(b)(1); *cf. Surles*, 474 F.3d at 306; *Latham*, 2016 WL 7395346, at *4–5 (sustaining defendant's undue burden objections, outlined in affidavit, because burden

outweighs "likely benefits") (Ex. A, B).  Further, the request is not sufficiently limited in time.  Moreover, the inspection reports of the TCJS would contain this information.

LaSalle asks the Court to sustain its objection that this interrogatory is overbroad.  *See* FED. R. CIV. P. 26(b)(2)(C)(i)–(iii); *Gould*, 809 F. Supp. at 339–40; *see also Williams*, 323 F. Supp. 3d at 1337; *Doe*, 788 F. Supp. 2d at 982–83; *Riley*, 233 F.R.D. at 500; *Diaz*, 2018 WL 1610541, at *3; *Dearwester*, 2016 WL 1377134, at *2–3; *Marcum*, 2012 WL 2018523, at *6; *McEvoy*, 2011 WL 1813014, at *4–5; *Avance*, 2005 WL 5315658, at *2.

**Interrogatory No. 16:**  Plaintiffs requested LaSalle to "[i]dentify any mental health services you provided to Martinez or for which you referred him."  Plaintiffs have the ability to request medical information on behalf of Martinez's estate.  Nevertheless, LaSalle responded in narrative form and produced documents in response to this request.  *See* FED. R. CIV. P. 33(d).  LaSalle asks the Court to sustain its objections that no further response to this interrogatory as written is required.  *See* FED. R. CIV. P. 26(b)(1), (b)(2)(C)(i); *Gould*, 809 F. Supp. at 339–40.

**Interrogatory No. 17:**  Plaintiffs requested LaSalle to "state the date you anticipated litigation resulting from the death of Mr. Martinez."  This request calls for a legal opinion and for information that is protected under the work-product doctrine.  Plaintiffs requested a privilege log, but such a log is only required for tangible things being withheld.  *See* FED. R. CIV. P. 26(b)(5).  LaSalle asks the Court to sustain its objections that this interrogatory is improper.  *See* FED. R. CIV. P. 26(b).

**Interrogatory No. 18:**  Plaintiffs requested LaSalle to "identify any entity providing medical or psychiatric care at the Jack Harwell Detention Center at any time while Martinez was incarcerated there."  LaSalle responded that medical personnel saw Martinez (even though there are no claims of improper medical care) and that a CCQ inquiry was sent to the county as

required by state law at that time. TEX. CODE. CRIM. PROC. art. 16.22. LaSalle also produced all of Martinez's medical files from the JHDC. *See* FED. R. CIV. P. 33(d). LaSalle asks the Court to sustain its objections that no further response to this interrogatory as written is required. *See* FED. R. CIV. P. 26(b)(2)(C)(i).

**Interrogatory No. 19:** Plaintiffs requested "the name, address, dates of operation, and any accrediting bodies for any correctional facility owned or operated by you from January 1, 2001 to the present." As noted above, Plaintiffs offered to limit the geographic scope to Texas and Louisiana and the temporal scope of the requests to between November 2005 and January 2017, other than for the JHDC. LaSalle already provided this information.

This request is vague as to the definition of "accrediting bodies." But in any event, there are none. LaSalle asks the Court to sustain its objections that no further response to this interrogatory as written is required. *See* FED. R. CIV. P. 26(b)(2)(C)(i).

**B.      Plaintiffs' Motion to Compel responses to their Requests for Production should be denied.**

In response to Plaintiffs' Requests for Production, LaSalle asserted multiple objections based on Plaintiffs' overbroad and inappropriate requests. Plaintiffs' Motion to Compel complains of these objections and requests the Court to compel additional documents. But, again, the requests for production, many of which echo the interrogatories, are poorly-worded or overly broad and created the issues that Plaintiffs now complain about and that this Court is forced to resolve. More importantly, as with their complaints about interrogatory answers, Plaintiffs never really explain *why* they need information on issues that have nothing to do with a claim based on the failure to monitor an allegedly suicidal inmate who was in protective custody. They just complain that LaSalle objected to requests that seek essentially all information in

LaSalle's files, all policies in effect at the jail concerning "observation," all employee discipline, all inmate deaths, and all lawsuits.

**Request for Production No. 1:**  Plaintiffs request "all written policies and procedures relating to the evaluation and treatment of suicidal inmates at the Jack Harwell Detention Center effective from the date you took over operations," including any changes to such policies and procedures after the date of Martinez's suicide.  LaSalle objected based on the fact that the request seeks disclosure of subsequent remedial measure in violation of Federal Rule of Evidence 407.  LaSalle produced all relevant policies in place at the time of the suicide.  LaSalle now asks the Court to sustain its objections that no further response to this request is required because it is overbroad.  *See* FED. R. CIV. P. 26(b)(2)(C); *see also Gould*, 809 F. Supp. at 339–40.

**Request for Production No. 2:**  Plaintiffs request "all duty rosters from the jail for November 1, 2015."  LaSalle produced those rosters with its second supplemental responses.  LaSalle now asks the Court to sustain its objections that no further response to this request as written is required.  *See* FED. R. CIV. P. 26(b)(2)(C)(i).

**Request for Production No. 3:**  Plaintiffs request a "visitor list from the jail and any logs identifying any person who visited Mr. Martinez in Jack Harwell Detention Center."  LaSalle produced all information in its possession.  LaSalle now asks the Court to sustain its objections that no further response to this request as written is required.  *See* FED. R. CIV. P. 26(b)(2)(C)(i).

**Request for Production No. 4:**  Plaintiffs request "all accreditation reports generated by any accrediting bodies since June 14, 2013 pertaining to the Jack Harwell Detention Center."  This request is vague as to the definition of "accrediting bodies."  But in any event, there are none.  See also LaSalle's Response and Objections to Interrogatory No. 19.  LaSalle now asks

the Court to sustain its objection that no further response to this request as written is required. *See* FED. R. CIV. P. 26(b)(2)(C)(i).

**Request for Production No. 5**: Plaintiffs request LaSalle to "produce and separately identify *all* records related to *any* disciplinary actions taken against jail personnel at *any* facility operated by you *since January 1, 2001* for failing to monitor inmates" (emphasis added). This request goes so far beyond the scope of what is permissible. As noted above, Plaintiffs offered to limit the geographic scope to Texas and Louisiana and the temporal scope of the requests to between November 2005 and January 2017, other than for the JHDC.

This request is still not properly limited in scope. It seeks information over a 12-year period and from all Texas and Louisiana facilities operated by LaSalle, neither of which are properly tailored to seek admissible evidence. Further, it seeks a response to all disciplinary actions related to failure to monitor inmates, which is beyond the scope of monitoring potentially suicidal inmates. Most regulations governing detention facilities fundamentally concerns "monitoring" inmates, so a complete response to this request requires the production of the records of nearly every single disciplinary action taken at every Texas and Louisiana facility for the past 12 years. Plaintiffs seek information that is not "sufficiently similar" to the allegations they have made. *Cf. Centeno v. City of Fresno*, 116-CV-00653-DAD-SAB, 2016 WL 7491634, at *10 (E.D. Cal. Dec. 29, 2016) ("the use of force in using manual restraint is not sufficiently similar to be discoverable in this action which involves a police shooting"). Thus, this request far exceeds the scope of permissible discovery under the rules, constitutes a fishing expedition, and is unduly burdensome (Ex. A, ¶ 7; Ex. B, ¶¶ 3, 6, 9).

LaSalle asks the Court to sustain its objections that a response to this request as written is not required because it is overbroad, vague, and unduly burdensome. *See* FED. R. CIV. P.

26(b)(2)(C)(i)–(iii); *Gould*, 809 F. Supp. at 339–40; *see also Williams*, 323 F. Supp. 3d at 1337;

*Doe*, 788 F. Supp. 2d at 982–83; *Riley*, 233 F.R.D. at 500; *Diaz*, 2018 WL 1610541, at *3;

*Dearwester*, 2016 WL 1377134, at *2–3; *Marcum*, 2012 WL 2018523, at *6; *McEvoy*, 2011 WL

1813014, at *4–5; *Avance*, 2005 WL 5315658, at *2.

LaSalle also asks that the Court sustain its objections to this request on grounds that it

seeks to violate the privacy and protected interests of third parties. *See In re: Xarelto*

*(Rivaroxaban) Products Liab. Litig.*, 313 F.R.D. 32, 36–37 (E.D. La. 2016) (recognizing

sensitive nature of personnel records and holding that plaintiff could not discover non-party

employee's personnel record "without an individualized showing of relevancy"); *Centeno*, 206

WL 7491634, *5–10 (holding that, when seeking records of even defendant employees, plaintiffs

must show how they are both relevant and proportional).

**Request for Production No. 6:**  Plaintiffs request LaSalle to "produce and separately

identify all documents related to investigations conducted by the Texas Commission on Jail

Standards, the Texas Department of Public Safety, or any other law enforcement agency

regarding inmate suicides since January 1, 2001 at any facility operated by you."  The request

also seeks "any documents related to any disciplinary action taken against jail personnel as a

result of these investigations."  As noted above, Plaintiffs offered to limit the geographic scope

to Texas and Louisiana and the temporal scope of the requests to between November 2005 and

January 2017, other than for the JHDC.

As with the prior similar requests and interrogatories, this request still goes beyond the

scope of what is permissible by failing to properly limit the scope.  It seeks information over a

12-year period and from all Texas and Louisiana facilities, neither of which are properly tailored

to seek admissible evidence.  Further, it seeks documents for "any" disciplinary actions related to

such investigations, which is far beyond the scope of what is discoverable and constitutes a fishing expedition. To fully respond to this request would be unduly burdensome, even if the type of discipline is narrowed (Ex. A, ¶ 7; Ex. B ¶¶ 3–6, 9). *Cf. Surles*, 474 F.3d at 306 (finding that compliance would be unduly burdensome where the record reflected that the search for responsive documents took approximately two weeks and over 180 hours of labor); *Latham*, 2016 WL 7395346, at *4–5 (sustaining defendant's undue burden objections, outlined in affidavit, because burden outweighs "likely benefits").

LaSalle now asks the Court to sustain its objections that any response to this request as written is not required because the request is overbroad, vague, and unduly burdensome. *See* Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii); *Gould*, 809 F. Supp. at 339–40; *see also Williams*, 323 F. Supp. 3d at 1337; *Doe*, 788 F. Supp. 2d at 982–83; *Riley*, 233 F.R.D. at 500; *Diaz*, 2018 WL 1610541, at *3; *Dearwester*, 2016 WL 1377134, at *2–3; *Marcum*, 2012 WL 2018523, at *6; *McEvoy*, 2011 WL 1813014, at *4–5; *Avance*, 2005 WL 5315658, at *2.

LaSalle also asks that the Court sustain its objections to this request on grounds that it seeks to violate the privacy and protected interests of third parties. *See In re: Xarelto Products Liab. Litig.*, 313 F.R.D. at 36–37 (recognizing sensitive nature of personnel records and holding that plaintiff could not discover non-party employee's personnel record "without an individualized showing of relevancy").

**Request for Production No. 7:**  Plaintiffs request "any audio or video recordings of Michael Martinez." LaSalle did not object to the request, but it has not located any responsive recordings and noted that it would "supplement to the extent such recordings are in its possession, custody or control."

**Request for Production No. 8:**  Plaintiffs request "all medical records concerning Michael Martinez."  As phrased, this seeks all medical records in existence relating to Martinez. LaSalle is not obligated to request or seek any records from Martinez's medical providers over the course of his life, but that is what a complete answer to this request requires because it is not limited in time or scope.  LaSalle produced Martinez's complete medical file from the JHDC. LaSalle now asks the Court to sustain its objections that no further response to this request as written is required because the request is overbroad.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii); *Gould*, 809 F. Supp. at 339–40; *see also Williams*, 323 F. Supp. 3d at 1337; *Doe*, 788 F. Supp. 2d at 982–83; *Riley*, 233 F.R.D. at 500; *Diaz*, 2018 WL 1610541, at *3; *Dearwester*, 2016 WL 1377134, at *2–3; *Marcum*, 2012 WL 2018523, at *6; *McEvoy*, 2011 WL 1813014, at *4–5; *Avance*, 2005 WL 5315658, at *2.

**Request for Production No. 9:**  Plaintiffs request "all documents ***or communications*** concerning training provided to your employees at the [JHDC] concerning monitoring inmates from the date you took over operations of the [JHDC] to present" (emphasis added).  As with Interrogatories 5 and 12, this request is unduly burdensome and overbroad.  And "training" and "communications" are not defined, but it could reasonably include any and all one-on-one conversations with or between correctional officers and rank.

Plaintiffs later agreed to limit this request to "monitoring inmates as it relates to suicide watch, ad[ministration] seg[regation], and the housing areas" (Ex. D).  But including "housing areas" effectively defeats the limitation in that inmates in "housing areas" still need to be monitored.  As explained in the response to Request for Production 5, detention facilities monitor inmates in many areas and circumstances, so a complete response to this request—even as limited—would require production of most records relating to all training—formal or informal—

since LaSalle took over operations.  Furthermore, any alleged deficiency in the training program "must be closely related to the ultimate injury," so the request must be narrowly tailored to seek only relevant information.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989).

As to the request for "communications concerning training," LaSalle cannot possibly provide a detailed description of every such communication because it would be unduly burdensome (Ex. A, ¶ 10; Ex. B, ¶ 11).  See also LaSalle's Response and Objections to Request for Production 5.  Additionally, the request is not reasonably limited in time, as anything after November 2015 would not be within the scope of discovery.  *See Gould*, 809 F. Supp. at 339–40 (documents created after relevant time are not relevant, and therefore, not discoverable).  LaSalle produced the training files for the Individual Defendants in this case.

LaSalle asks the Court to sustain its objections that that no further response to this request as written is required because this request is overbroad and unduly burdensome.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii); *Gould*, 809 F. Supp. at 339–40; *see also Williams*, 323 F. Supp. 3d at 1337; *Doe*, 788 F. Supp. 2d at 982–83; *Riley*, 233 F.R.D. at 500; *Diaz*, 2018 WL 1610541, at *3; *Dearwester*, 2016 WL 1377134, at *2–3; *Marcum*, 2012 WL 2018523, at *6; *McEvoy*, 2011 WL 1813014, at *4–5; *Avance*, 2005 WL 5315658, at *2.

**Request for Production No. 10**:  Plaintiffs request "all documents *or communications* relating to all policies and/or procedures concerning observation requirements at the Jack Harwell Detention Center of (1) detainees who posed a risk of suicide *and* (2) *detainees who did **not** pose a risk of suicide* from the date you took over operations of the Jack Harwell Detention Center to the present" (emphasis added).  This request, as phrased, requests *all* documents and *all* possible communications—written and oral—regarding observation requirements for *all* detainees at the facility for *any* reason.  This is the definition of a patently overbroad request.

"Observation" or monitoring inmates is the purpose of a detention facility. LaSalle cannot possibly provide a detailed description of every such "communication" on these subjects because it would be unduly burdensome. *Cf. Surles*, 474 F.3d at 306 (finding that compliance would be unduly burdensome where the record reflected that the search for responsive documents took approximately two weeks and over 180 hours of labor); *Latham*, 2016 WL 7395346, at *4–5 (sustaining defendant's undue burden objections, outlined in affidavit, because burden outweighs "likely benefits") (Ex. A ¶ 10; Ex. B, ¶ 11). Nor should it have to produce responsive policies because the request technically encompasses every policy to operate a jail where jailers need to keep track of all detainees.

Notwithstanding these obvious defects, LaSalle produced relevant and responsive documents that address the issues in this case. LaSalle now asks the Court to sustain its objections that no further response to this request as written is required because the request is overbroad and unduly burdensome. *See* FED. R. CIV. P. 26(b)(2)(C)(i)–(iii); *Gould*, 809 F. Supp. at 339–40; *see also Williams*, 323 F. Supp. 3d at 1337; *Doe*, 788 F. Supp. 2d at 982–83; *Riley*, 233 F.R.D. at 500; *Diaz*, 2018 WL 1610541, at *3; *Dearwester*, 2016 WL 1377134, at *2–3; *Marcum*, 2012 WL 2018523, at *6; *McEvoy*, 2011 WL 1813014, at *4–5; *Avance*, 2005 WL 5315658, at *2.

**<u>Request for Production No. 11</u>:** Plaintiffs requested "documents relating to *all* lawsuits, settlements, pleadings and judgments *relating to deaths* and/or suicide attempts at any facility owned or operated by Defendant since January 1, 2001" (emphasis added). As noted, Plaintiffs offered to limit the geographic scope to Texas and Louisiana and the temporal scope of the requests to between November 2005 and January 2017, other than for the JHDC. Even narrowed, this request still exceeds what is permissible with respect to time and location.

Plaintiffs seek information over a 12-year period and from all Texas and Louisiana facilities, neither of which are properly tailored to seek admissible evidence. This far exceeds the scope of permissible discovery under the rules and constitutes a fishing expedition—the issue here is suicide. LaSalle now asks the Court to sustain its objections to this request as written because the request is overbroad, vague, and unduly burdensome. *See* FED. R. CIV. P. 26(b)(2)(C)(i)–(iii); *Gould*, 809 F. Supp. at 339–40; *see also Williams*, 323 F. Supp. 3d at 1337; *Doe*, 788 F. Supp. 2d at 982–83; *Riley*, 233 F.R.D. at 500; *Diaz*, 2018 WL 1610541, at *3; *Dearwester*, 2016 WL 1377134, at *2–3; *Marcum*, 2012 WL 2018523, at *6; *McEvoy*, 2011 WL 1813014, at *4–5; *Avance*, 2005 WL 5315658, at *2.

Further, this request seeks documents related to **any death**, which would require a response that goes far beyond the scope of what is discoverable. Courts routinely limit discovery requests of this nature to situations that are similar to the facts and issues of the underlying case. *See, e.g.*, *Wise v. Ozmint*, No. CIVA 609-153-HFF-WMC, 2009 WL 1664440, at *1 (D.S.C. June 15, 2009) (sustaining objection to request for all lawsuits filed against the defendants because "[c]learly such documents are not relevant to the plaintiff's case"); *Kobelco Metal Powder of Am., Inc. v. The Energy Co-op., Inc.*, No. IP 01-0051-CHK, 2001 WL 1397311, at *4 (S.D. Ind. Oct. 30, 2001) (limiting interrogatory asking for information about "all lawsuits" to suits involving the specific kind of breach of contract at issue in that case).

One Illinois district court considering a request "for all lawsuits filed since January 1, 2008 that allege that any IDOC [Illinois Department of Corrections] employee was deliberately indifferent to a risk that an IDOC inmate would be sexually assaulted by another IDOC inmate" held that the request over overly broad and burdensome. *Fontano v. Godinez*, No. 12-CV-3042, 2013 WL 3712406, at *2–3 (C.D. Ill. July 12, 2013). The court noted that "[d]eposition

transcripts and discovery responses in *all* inmate sexual assault cases arising in Illinois prisons for the last 4 1/2 years is simply too far afield from Plaintiff's claims in this case from a relevance perspective to justify the burden." *Id.* (emphasis in original); *see also Smith v. Griffin*, No. CIV. A. 91-1539, 1992 WL 310285, at *1 (E.D. Pa. Oct. 21, 1992) (referring to plaintiff's requests for pleadings in all lawsuits filed against the City—including "all complaints of police misconduct filed within the last six years"—as "so outlandish that full compliance is ... impossible"). So, too, is this request.

Finally, and particularly with respect to the request for settlements, LaSalle also asks that the Court sustain its objections to this request on grounds that it is not proportional to the needs of the case and seeks to violate protective orders, confidentiality orders, and the privacy and protected interests of third-party litigants who are bound by the confidential settlements. As this court previously noted, requesting settlement documents with such protections requires a "heightened, more particularized showing of relevance." *In re Motions to Quash Subpoena filed by Craft Gallery, Ltd.*, No. 11-CV-01239 AW, 2013 WL 8367788, at *1 (W.D. Tex. Apr. 5, 2013) (quoting *Chappelle v. Varano*, 2012 WL 3241503, at *3 (M.D. Pa. Aug. 7, 2012) (holding that settlement agreement could not be compelled because "the information sought from the settlement agreement is not sufficiently relevant to the current litigation")); *MedImmune, L.L.C. v. PDL BioPharma, Inc.*, No. C 08–5590 JF (HRL), 2010 WL 3636211, at *2 (N.D. Cal. 2010) (courts "must balance [one party's] interest in the discovery of potentially relevant information against [another party's] interest in protecting a settlement negotiated with the expectation of confidentiality."). Plaintiffs made *no* showing of relevance with respect to the requested settlements, not to mention a "heightened, more particularized showing of relevance" that would meet the applicable standard. Defendant's objection should be sustained.

**Request for Production No. 12:** Plaintiffs request "any documents, audio recordings, or video recordings you provided to the McLennan County Sherriff or to the McLennan County District Attorney's office, voluntarily or in response to a subpoena, relating to the death of Michael Martinez and/or the criminal prosecutions of" the individual defendants. LaSalle objected because such material was no longer within its possession, custody, or control and further noted that if any responsive material is located it will be disclosed. LaSalle now asks the Court to sustain its objection that no further response to this request as written is required because the request is seeks information not in the possession, custody, or control of LaSalle. *See* FED. R. CIV. P. 26(b)(2)(C)(i).

**Request for Production No. 14:** Plaintiffs requested "any contracts with any entity regarding providing medical and mental health care to prisoners at the Jack Harwell Detention Center that were in effect on November 1, 2015." LaSalle objected based on relevance and overbreadth, because there are no allegations of deficient "medical care" in this lawsuit. LaSalle, however, did produce the contracts with two doctors who see patients at the JHDC. LaSalle now asks the Court to sustain its objections that no further response to this request as written is required because the request is overbroad and seeks information that is not within the scope of permissible discovery. *See* FED. R. CIV. P. 26(b)(1), (b)(2)(C)(i); *Gould*, 809 F. Supp. at 339–40; *Doe*, 788 F. Supp. 2d at 982–83.

**Request for Production No. 15:** Plaintiffs request "a diagram of the Jack Harwell Detention Center as it was on November 1, 2015." LaSalle objected because the information sought is confidential and disclosure could potentially violate institutional security. This request also seeks information which is not reasonably calculated to lead to discovery of admissible evidence, as there is no assertion of how a "diagram" of the facility would be relevant to the

issues in this case. LaSalle did produce a floor plan of the facility after the Court entered a protective order. LaSalle now asks the Court to sustain its objections that no further response to this request as written is required. *See* FED. R. CIV. P. 26(b)(2)(C)(i).

**Request for Production No. 16:** Plaintiffs request "any surveillance video recordings of any location where Mr. Martinez was housed in the Jack Harwell Detention Center." This request is overbroad on its face. It is not at all limited in time, so it fails on that basis alone. And it is hard to see how such recording would be at all relevant. The request does not seek recordings of Martinez, but of "any location" in the facility—at ***any*** time—where he was housed. LaSalle now asks the Court to sustain its objection to this request as written is not required because the request is irrelevant and overbroad. *See* FED. R. CIV. P. 26(b)(1); *Gould*, 809 F. Supp. at 339–40; *Doe*, 788 F. Supp. 2d at 982–83.

**Request for Production No. 17:** Plaintiffs requested "all documents concerning Mr. Martinez, including any electronically stored information." This request is not limited to documents in the possession, custody, or control of LaSalle. Nevertheless, LaSalle included responsive documents in its possession, custody, or control in its Initial Disclosures and in its supplemental disclosures and responses to requests for production and will supplement if more is found. LaSalle now asks the Court to sustain its objections that no further response to this request as written is required because the request is overbroad. *See* FED. R. CIV. P. 26(b)(1), (b)(2)(C)(i); *Gould*, 809 F. Supp. at 339–40; *Doe*, 788 F. Supp. 2d at 982–83.

**Request for Production No. 18:** Plaintiffs request "documents relating to all lawsuits, settlements, pleadings, and judgments where LaSalle Corrections paid a claim alleging violations of 42 U.S.C. § 1983, the Americans with Disabilities Act, the Rehabilitation Act, or negligence

theories." This request goes beyond the scope of what is permissible by failing to properly limit the scope in subject matter, time, and location.

Plaintiffs assert no claims under the Americans with Disabilities Act or the Rehabilitation Act. So, any such lawsuits are obviously irrelevant. *See Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1045 (D. Minn. 2010), *aff'd*, 413 F. App'x 925 (8th Cir. 2011) (where plaintiff sought information about all lawsuits, judgments, and sanctions for alleged violations of *multiple* statutes, but the only remaining claim was brought under *one* of the statutes, the court sustained defendant's objection to request for information related to other statutes).

Moreover, the request for documents relating to **all** other Section 1983 claims is also overly broad in scope. A complete response would involve issues not at all relevant to this case. *In re Motions to Quash Subpoena filed by Craft Gallery, Ltd.*, 2013 WL 8367788, at *1 (holding that settlement agreement could not be compelled because "the information sought from the settlement agreement is not sufficiently relevant to the current litigation"); *cf. Kobelco Metal Powder of Am., Inc.*, 2001 WL 1397311, at *4 (limiting interrogatory asking for information about "all lawsuits" to suits involving specific kind of breach of contract at issue); *Smith*, 1992 WL 310285, at *1 (referring to plaintiff's requests for pleadings in all lawsuits filed against City—including "all complaints of police misconduct filed within the last six years"—as "so outlandish that full compliance is ... impossible"); *Fontano*, 2013 WL 3712406, at *2–3 (limiting production to claims involving Prison Rape Elimination Act in Illinois prisons, because request for all lawsuits related to sexual assault was overbroad).

Additionally, this request seeks information over a 12-year period and across all facilities operated by LaSalle in Texas and Louisiana, neither of which are properly tailored to seek admissible evidence. Plaintiffs also fail to limit the request in subject matter, as this request

would require a response including documents that have nothing to do with suicides. This request far exceeds the scope of permissible discovery under the rules and constitutes an impermissible fishing expedition.

LaSalle now asks the Court to sustain its objections that any response to this request as written is not required because the request is overbroad, vague, and unduly burdensome. *See* FED. R. CIV. P. 26(b)(2)(C)(i)–(iii); *Gould*, 809 F. Supp. at 339–40; *see also Williams*, 323 F. Supp. 3d at 1337; *Doe*, 788 F. Supp. 2d at 982–83; *Riley*, 233 F.R.D. at 500; *Diaz*, 2018 WL 1610541, at *3; *Dearwester*, 2016 WL 1377134, at *2–3; *Avance*, 2005 WL 5315658, at *2.

LaSalle also asks that the Court sustain its objections to the request for settlements on grounds that it seeks to violate protective orders, confidentiality orders, and the privacy and protected interests of third parties. *See In re Motions to Quash Subpoena filed by Craft Gallery, Ltd.*, 2013 WL 8367788, at *1 (quoting *Chappelle,* 2012 WL 3241503, at *3 (holding that party requesting settlements must meet "heightened, more particularized showing of relevance" and denying motion to compel settlement agreement for failure to meet that standard)); *MedImmune, L.L.C.*, 2010 WL 3636211, at *2 (courts "must balance [one party's] interest in the discovery of potentially relevant information against [another party's] interest in protecting a settlement negotiated with the expectation of confidentiality."). Plaintiffs have not made ***any*** showing of relevance with respect to the requested settlements, not to mention a "heightened, more particularized showing of relevance" that would meet the applicable standard. Consequently, Defendant's objection should be sustained.

**Request for Production No. 19**: Plaintiffs request "documents, including but not limited to email and other electronically stored information, regarding inmate suicide attempts (or completed suicides) at any LaSalle Corrections facility from January 1, 2001 to the present."

As noted, Plaintiffs offered to limit the geographic scope to Texas and Louisiana and the temporal scope to between November 2005 and January 2017, other than for the JHDC.

This request still exceeds the scope of what is permissible by failing to properly limit the scope in time and location. It seeks information over a 12-year period and across all Texas and Louisiana facilities, neither of which are properly tailored to seek admissible evidence. This request far exceeds the scope of permissible discovery under the rules and constitutes a fishing expedition. LaSalle now asks the Court to sustain its objections to this request as written because the request is overbroad, vague, and unduly burdensome (Ex. A, ¶ 9; Ex. B, ¶ 8; Ex. C ¶¶ 2–7). *See* FED. R. CIV. P. 26(b)(2)(C)(i)–(iii); *Gould*, 809 F. Supp. at 339–40; *see also Williams*, 323 F. Supp. 3d at 1337; *Doe*, 788 F. Supp. 2d at 982–83; *Riley*, 233 F.R.D. at 500; *Diaz*, 2018 WL 1610541, at *3; *Dearwester*, 2016 WL 1377134, at *2–3; *Avance*, 2005 WL 5315658, at *2.

LaSalle also asks that the Court sustain its objections to this request on grounds that it seeks to violate the privacy and protected interests of third parties. *See* Health Insurance Portability and Accountability Act (HIPAA) of 1996, Pub. L. No. 104–191, 110 Stat. 1936 (1996), *as adopted in the federal regulations in* 45 C.F.R. Parts 160, 162, and 164; 42 U.S.C. § 1320d–6 (addressing offense, and associated penalties, relating to wrongful disclosure of individually identifiable health information to third parties); *see also Westinghouse Elec. Corp.*, 638 F.2d at 577 (medical records "well within the ambit of materials entitled to privacy protection"). Notwithstanding the Protective Order in place, Plaintiffs failed to show how these third-party intrusions are relevant to their claims.

**Request for Production No. 20:** Plaintiffs request "all investigations, incident reviews, peer reviews, and law enforcement investigations related to inmate suicide attempts (or

completed suicides) at any LaSalle Corrections facility from January 1, 2001 to the present." Plaintiffs have "agree[d] that this [request] is redundant" given the other requests they have made (Ex. D). However, in the event that Plaintiffs decide to pursue this request, LaSalle maintains its objections outlined below.

This request exceeds the scope of what is permissible by failing to properly limit the scope in time and location. As noted above, Plaintiffs offered to limit the geographic scope to Texas and Louisiana and the temporal scope of the requests to between November 2005 and January 2017, other than for the JHDC. But the request still seeks information over a 12-year period from all Texas and Louisiana facilities, neither of which are properly tailored to seek admissible evidence. The request far exceeds the scope of permissible discovery under the rules and constitutes a fishing expedition. LaSalle asks the Court to sustain its objections to this request as written because the request is overbroad, vague, and unduly burdensome. *See* FED. R. CIV. P. 26(b)(2)(C)(i)–(iii); *Gould*, 809 F. Supp. at 339–40; *see also Williams*, 323 F. Supp. 3d at 1337; *Doe*, 788 F. Supp. 2d at 982–83; *Riley*, 233 F.R.D. at 500; *Diaz*, 2018 WL 1610541, at *3; *Dearwester*, 2016 WL 1377134, at *2–3; *Marcum*, 2012 WL 2018523, at *6; *McEvoy*, 2011 WL 1813014, at *4–5; *Avance*, 2005 WL 5315658, at *2.

LaSalle also asks that the Court sustain its objections to this request on grounds that it seeks to violate the privacy and protected interests of third parties. *See* Health Insurance Portability and Accountability Act (HIPAA) of 1996, Pub. L. No. 104–191, 110 Stat. 1936 (1996), *as adopted in the federal regulations in* 45 C.F.R. Parts 160, 162, and 164; 42 U.S.C. § 1320d–6 (addressing offense, and associated penalties, relating to wrongful disclosure of individually identifiable health information to third parties); *see also Westinghouse Elec. Corp.*, 638 F.2d at 577 (medical records "well within the ambit of materials entitled to privacy

protection"). Notwithstanding the Protective Order in place, Plaintiffs failed to show how this information is relevant to their claims.

**Request for Production No. 21**: Plaintiffs requested "all post orders, shift orders, 'pass on' books, log books, cell block logs, or other written instructions to jailers from October 25, 2015 and November 1, 2015." This request exceeds the scope of permissible discovery under the rules because the request documents are not relevant and, thus, constitutes a fishing expedition. LaSalle did produce activity logs for this time period in its Second Supplemental Disclosures. Plaintiffs have yet to explain how *all* facility logs and post orders are relevant to this lawsuit. LaSalle now asks the Court to sustain its objections that no further response to this request as written is required because the request is irrelevant and overbroad. *See* FED. R. CIV. P. 26(b)(2)(C)(i); *Doe*, 788 F. Supp. 2d at 982–83; *see also Gould*, 809 F. Supp. at 339–40.

**Request for Production No. 24**: Plaintiffs request "all policies regarding the following subjects at the Jack Harwell Detention Center from the date you took over operations of the Jack Harwell Center to the present: Suicide prevention; Mental health care; Monitoring inmates; Medical care; Emergency medical care; and Transportation to outside medical or mental health providers." In addition to being duplicative of other requests, this request is not reasonably limited in time. LaSalle further objected based on the fact that the request seeks disclosure of subsequent remedial measure in violation of Federal Rule of Evidence 407. LaSalle produced the policies in place at the time of the suicide. LaSalle now asks the Court to sustain its objections that no further response to this request as written is required because the request is overbroad and duplicative. *See* FED. R. CIV. P. 26(b)(1), (b)(2)(C)(i); *Gould*, 809 F. Supp. at 339–40; *Doe*, 788 F. Supp. 2d at 982–83.

### C. Plaintiffs' Motion to Compel responses to their Requests for Admission should be denied.

Plaintiffs complain of LaSalle's denials and objections in its responses to Plaintiffs' Requests for Admission. The federal rules permit a party to serve "a written request to admit ... the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, ***the application of law to fact***, or opinions about either; and (B) the genuineness of any described documents." FED. R. CIV. P. 36 (emphasis added). But "[r]equests to admit may not be used to establish legal conclusions." *Sommerfield v. City of Chicago*, 251 F.R.D. 353, 355 (N.D. Ill. 2008); *see also In re Carney*, 258 F.3d 415, 418 (5th Cir. 2001); *Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, 124 F. App'x 169, 172 (4th Cir. 2005); *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 534 (D.S.C. 2018). Plaintiffs now complain that LaSalle objected to admissions concerning legal conclusions.

**Request for Admission No. 1:** Plaintiffs asked LaSalle to draw a legal conclusion as to the validity of service. This request demands a legal conclusion and is, therefore, improper. LaSalle is not required to draw a legal conclusion, and Plaintiffs cannot compel an admission. *Sommerfield*, 251 F.R.D. at 355; *see also In re Carney*, 258 F.3d at 418; *Adventis, Inc.*, 124 F. App'x at 172; *Mach. Sols., Inc.*, 323 F.R.D. at 534.

**Request for Admission No. 2:** Plaintiffs asked LaSalle to draw a legal conclusion as to the timeliness of the lawsuit. This request demands a legal conclusion and is, therefore, improper. LaSalle is not required to draw a legal conclusion, and Plaintiffs cannot compel an admission. *Sommerfield*, 251 F.R.D. at 355; *see also In re Carney*, 258 F.3d at 418; *Adventis, Inc.*, 124 F. App'x at 172; *Mach. Sols., Inc.*, 323 F.R.D. at 534.

**Request for Admission No. 6:** Plaintiffs asked LaSalle to admit that its name is spelled correctly in the style of the case. LaSalle will supplement.

**Request for Admission No. 7**:  Plaintiffs asked LaSalle to admit that its name is complete and correct in the style of the case.  LaSalle will supplement.

**Request for Admission No. 8**:  Plaintiffs asked LaSalle to admit that it has been sued in the proper capacity.  This request demands a legal conclusion and is, therefore, improper. LaSalle is not required to draw a legal conclusion, and Plaintiffs cannot compel an admission. *Sommerfield*, 251 F.R.D. at 355; *see also In re Carney*, 258 F.3d at 418; *Adventis, Inc.*, 124 F. App'x at 172; *Mach. Sols., Inc.*, 323 F.R.D. at 534.

**Request for Admission No. 9**:  Plaintiffs asked LaSalle to admit "[t]hat all persons or entities that you maintain should be sued in order to sue you in the proper capacity are named defendants in this lawsuit."  This request demands a legal conclusion and is, therefore, improper. LaSalle is not required to draw a legal conclusion, and Plaintiffs cannot compel an admission. *Sommerfield*, 251 F.R.D. at 355; *see also In re Carney*, 258 F.3d at 418; *Adventis, Inc.*, 124 F. App'x at 172; *Mach. Sols., Inc.*, 323 F.R.D. at 534.

**Request for Admission No. 12**:  Plaintiffs asked LaSalle to admit "[t]hat Jack Harwell Detention Center was required to provide medical and mental health care to inmates at all relevant times."  This request demands a legal conclusion and is, therefore, improper.  LaSalle is not required to draw a legal conclusion, and Plaintiffs cannot compel an admission. *Sommerfield*, 251 F.R.D. at 355; *see also In re Carney*, 258 F.3d at 418; *Adventis, Inc.*, 124 F. App'x at 172; *Mach. Sols., Inc.*, 323 F.R.D. at 534.

## IV. SANCTIONS

Plaintiffs also demanded that the Court award them attorneys' fees as sanctions.  Such a sanction is not warranted.  Rule 37(a)(5) does permit a court to award sanctions in certain discovery disputes.  But the Rule also requires that sanctions not be imposed when: "(i) the

movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A)(i)–(iii); *see also Diaz*, 2018 WL 1610541, at *10 (holding that, even where motion to compel was granted in part, opposition to the motion was "substantially justified" and, thus, declining to award sanctions).

Even if this Court grants Plaintiffs' Motion to Compel, LaSalle was "substantially justified" in opposing disclosure based on the wording of Plaintiffs' requests. As explained in detail above, Plaintiffs failed to appropriately tailor their requests to seek only relevant information that is proportional to the needs of the case—and the discrete claims alleged. Moreover, though Plaintiffs sent one letter to LaSalle complaining of some of LaSalle's responses, Plaintiffs did not modify any requests based on the conference, nor did they confer with LaSalle about all issues raised in their motion before filing it. Instead, Plaintiffs chose to quickly move to compel LaSalle's responses. Since the filing of their motion, Plaintiffs have tentatively offered to limit the scope certain requests to address some of LaSalle's objections to the overly broad and irrelevant requests. Plaintiffs' own recognition of the need to narrow certain requests makes it clear that LaSalle's objections were not frivolous. So, too, does the law and arguments above. Thus, the Court should deny Plaintiffs' request for attorneys' fees.

## V. CONCLUSION

For the above reasons, the Court should deny Plaintiffs' Motion to Compel and request for sanctions and grant Defendant LaSalle's Motion for Protective Order protecting it from further responses to the challenged discovery requests.

Respectfully submitted,

**HORNE ROTA MOOS, LLP**


By: _/s/Marvin C. Moos_____
      MARVIN C. MOOS
      SBN: 14413900

2777 Allen Parkway, Suite 1200
Houston, Texas 77019
(713) 333-4500
(713) 333-4600 - facsimile
mmoos@hrmlawyers.com

ATTORNEYS FOR DEFENDANT,
**SOUTHWESTERN CORRECTIONAL,
L.L.C. d/b/a LASALLE
CORRECTIONS, L.L.C.**

## CERTIFICATE OF SERVICE

I hereby certify that on **February 8, 2019**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Jeff Edwards**
**Scott Medlock**
EDWARDS LAW
The Haehnel Building
1101 East 11th Street
Austin, Texas 78702
*Attorneys for Plaintiff*

**Tony L. Schaffer**
SCHAFFER LAW FIRM PLLC
14360 Falcon Head Blvd, Suite 100
Austin, Texas 78738
*Attorney For Defendant Milton Walker*

**Kimberly Land Cormier**
SHAW & ASSOCIATES, P.C.
10670 N. Central Expressway, Suite 245,
Dallas, Texas 75231
*Attorney For Defendant Chris Simpson*

**Christopher Bennett**
LAW OFFICES OF ZIMMERMAN, ZIMMERMAN,
 COTNER, LEJEUNE, RESSETAR & BENNETT
3501 W. Waco Drive
Waco, Texas 76710
*Attorney for Plaintiff*

**A. Robert Lamb, Jr.**
LAW OFFICE OF A. ROBERT LAMB, JR.
6860 North Dallas Parkway, Suite 200
Plano, Texas  75024
*Attorney For Defendant Michael Crittenden*


_____*/s/ Marvin C. Moos*_____
MARVIN C. MOOS