IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| SALVADOR MARTINEZ and GLORIA MARTINEZ, Individually and as personal Representatives of the ESTATE OF MICHAEL MARTINEZ, Plaintiffs, | § § § § § § | |
| v. | § § | CIVIL ACTION NO. 6:17-cv-9-ADA-JCM |
| SOUTHWESTERN CORRECTIONAL, L.L.C. d/b/a LASALLE CORRECTIONS, L.L.C., MICHAEL CRITTENDEN, CHRISTOPHER SIMPSON, and MILTON WALKER, Defendants. | § § § § § § | |

## DECLARATION OF ROBERT JAY EASON

STATE OF TEXAS §
§
COUNTY OF HAYS §

Pursuant to 28 U.S.C. § 1746, I, Robert Jay Eason, do hereby declare under penalty of perjury that the following is true and correct:

1. "My name is Robert Jay Eason. I am the Director of Operations for Texas, Georgia, Arizona, and New Mexico for Southwestern Correctional, L.L.C. d/b/a LaSalle Corrections, L.L.C. ("LaSalle"). I am over 18 years of age, have not been convicted of a felony or a crime of moral turpitude, and am competent to make this declaration. As the Director of Operations, I am required to have knowledge regarding facility operations, policies in place, inmate counts, employees and jail staffing, employee discipline, investigations by jail personnel, and related documents of detention facilities operated by LaSalle. I have access to the data and records that was collected from the facilities discussed below and in the attached Exhibits and I reviewed the data. I have personal knowledge of the facts stated herein, and I certify that such facts are true and correct to the best of my knowledge.

2. LaSalle is a private correctional company that contracts with local governments and with the federal government to operate county jails, detention facilities, and correctional facilities in various states. LaSalle operates detention facilities in Texas, Louisiana, Arizona, Georgia and New Mexico. LaSalle contracted with McLennan County, Texas to operate the Jack Harwell Detention Center ("JHDC"), effective June 14, 2013. According to the Complaint that I

reviewed, the Plaintiffs in this lawsuit are the parents of Michael Martinez, a detainee who committed suicide in the JHDC on or about November 1, 2015.

3. I have reviewed the Plaintiffs' Initial Discovery Requests and the Motion to Compel filed by Plaintiffs. I also reviewed the email from the lawyers for the Plaintiffs where they offered to narrow certain discovery requests. Plaintiffs now seek many categories of records from all LaSalle-operated facilities in Texas and Louisiana between November 1, 2005 and January 11, 2017. During that time frame, LaSalle operated eight (8) detention facilities in Texas. A list of those facilities and dates of operation is attached to this declaration as Exhibit A-1. Of those eight Texas facilities, two are no longer operated by LaSalle: the Burnet County Jail where operations ceased on March 31, 2014, and the Crystal City County Jail where operations ceased on May 1, 2012. The records from the Burnet County Jail and the Crystal City County Jail are no longer available because all of the records were destroyed in November and December of 2015, including employee personnel files. To locate many of the records requested by Plaintiffs from the other Texas facilities, LaSalle personnel at all six Texas facilities will separately need to review thousands of pages of inmate and employee files going back years. This is because the facility files are not maintained in a manner where the records requested by the Plaintiffs can be easily located, if such records even exist.

4. In Interrogatory No. 7, Plaintiffs seek records of all attempted suicides that resulted in injuries requiring medical attention beyond first aid. This information is not separately maintained in a readily accessible form. The TCJS did not require attempted suicides to be tracked and reported until January 2018. Attempted suicides at the Texas facilities are documented with a critical incident report. This practice began in January 2013. To review information in any records before that time will require a search of the critical incident reports and inmate files at each Texas facility. The critical incident reports that document attempted suicides are not filed separately. Instead, the critical incident reports are supposed to be filed at each Texas facility on a monthly basis in chronological order. Depending on the severity of the incident, a critical incident report, with all supporting documents, will range from 8–12 pages to over 50 pages, each. Someone at all six Texas facilities will need to review all critical incident reports for the time frames requested. Each report will need to be reviewed in detail to identify those that documented an attempted suicide. Each report will then need to be reviewed further to determine whether any detainees needed "medical attention beyond first aid" or offsite medical care. To identify the actual number of critical incident reports at issue since 2013, I directed personnel at all Texas facilities to provide a count of all such reports for the applicable time frames, and I reviewed the data to compile this list based on reports from the facilities. As shown in Exhibit A-2, this would require a review of 7,724 critical incident report files at the six (6) Texas facilities. This would take one employee multiple weeks at each jail, which would divert that employee from his or her everyday duties. The term "first aid" is not defined. If the critical incident reports do not sufficiently describe the degree of injuries resulting from an attempted suicide, however that term is defined, someone at each Texas facility will then need to review the separate medical files for all detainees during the time frame requested. The TCJS requires all jails in Texas to maintain a total population count for each jail. These numbers are tracked by LaSalle using a program called Jail Management System. To determine the number of detainees at the six Texas facilities over the time frames requested, I directed personnel at each Texas facility to review the Jail Management System to determine the total number of

detainees that booked into each facility. I then reviewed this back-up data, which is summarized in Exhibit A-3. It would require review of 77,720 inmate medical files for the Texas facilities to determine which inmates needed first aid. On these total numbers in Exhibit A-3, there are no detainee numbers from Johnson County for the years 2010–2014. The Johnson County Jail updated its Jail Management System in 2015 and the data for these years cannot be retrieved or located. To review the separate 77,720 inmate files for which records exist at the Texas facilities would take months. Then, approval to release records for county inmates would be required from the various counties. Also, some of these inmates were federal detainees from the United States Marshal's Service (USMS) or Immigration and Customs Enforcement (ICE). During the time frame for which Plaintiffs request records, federal detainees were at the Johnson County Jail, the Jack Harwell Detention Center, the Parker County Jail, the Bowie County Correctional Center, and the Jefferson County Downtown Jail. Inmate records for the federal detainees are not LaSalle's property. To release any of this information will require advance approval of the USMS or ICE. There is no way to determine the exact number of federal inmates at the above jails because the booking systems in use cannot be searched by arresting jurisdiction. To identify the exact number of federal detainees would require an extraordinary amount of time because each separate book-in would need to be searched individually.

5.  In Interrogatory No. 11, Plaintiffs seek records of all inmate deaths at all 13 subject facilities, regardless of the cause of death. This interrogatory is not limited to other suicides and would include deaths by natural causes, homicides, or other medical conditions. These deaths would also be tracked with critical incident reports. As shown in Exhibit A-2, this would require a review of 7,724 critical incident report files at the six (6) Texas facilities. This would take one employee multiple weeks at each jail, which also would divert that employee from his or her everyday duties.

6.  In Interrogatory No. 15, Plaintiffs seek a detailed discussion of all records at the JHDC concerning every time jailers were cited for violating any rule of the Texas Commission on Jail Standards ("TCJS"), including the date of the incident, the jailer who allegedly failed to comply with the rule, the rule that was allegedly violated, the corrective action taken, and the date of the corrective action. Plaintiffs do not identify any specific TCJS rule I their discovery requests. The TCJS standards have 26 separate Chapters with many rules under each Chapter and subsection. I reviewed the narrowed categories of documents being requested by the lawyers for Plaintiff. This will not shorten the time to locate documents. LaSalle personnel will have to locate every file where every LaSalle employee that ever worked at the JHDC was cited for violating any TCJS rule even if that provision had no involvement with Mr. Martinez's detention. LaSalle disciplinary actions are included with employee personnel files and are maintained by Human Resources at the JHDC. To locate any employee discipline for violations of TCJS regulations, someone at the JHDC will need to review all personnel files for all employees between June 2013 and the present. Then, for any employee who received some disciplinary action, each form will need to be reviewed in detail to determine the reason and whether it corresponds to a violation of any TCJS regulation as Plaintiffs' counsel offered to narrow. As shown in Exhibit A-4, this would require a review of 3,637 personnel files. A personnel file can range from a few pages to over 150 pages, depending on how long the person has been employed. This would take one employee multiple weeks, which also would divert that employee from his or her everyday duties. To determine the total number of employees, I

directed Human Resources at LaSalle corporate headquarters to review all personnel and payroll records for each Texas facility and provide the summary listed in Exhibit A-4. I then reviewed the back-up data and it is accurate to the best of my knowledge.

7. In Request for Production No. 5, Plaintiffs seek all records of all discipline for all LaSalle correctional officers at all Texas facilities for failure to properly monitor detainees. There is no separate disciplinary charge for "failure to monitor." Instead, this violation could be categorized as failure to follow orders, falsification of records, substandard duty performance, or gross negligence. Each of these disciplinary violations could also include numerous other infractions. And the choice of the actual disciplinary violation chosen would be subject to some discretion by the disciplinary officers at each Texas facility depending on the severity of the incident and factors such as how long an officer had been working, the relative degree of the failure to monitor, and past disciplinary history for the employee. All employee disciplinary actions are maintained by Human Resources at each Texas facility, and are filed with the employees' personnel files. LaSalle has already produced the full personnel files for the three individual Defendants in this suit. To locate any disciplinary action against a LaSalle employee for the failure to monitor detainees, someone at all six Texas facilities will need to review all personnel files for all current and former employees for the time frames requested. Then, for any employee that received some disciplinary action, each form will need to be reviewed in detail to determine the reason for the discipline and whether it fits in the definition of "failure to monitor." As shown in Exhibit A-4, this would require a review of 3,637 personnel files for the Texas facilities. This would take one employee over a month at each jail, which also would divert that employee from his or her everyday duties.

8. In Request for Production No. 10, Plaintiffs also seek all documents or communications "relating to" policies and procedures concerning "observation requirements" at the Jack Harwell Detention Center for detainees who posed a risk of suicide and for detainees who did not pose a suicide risk. LaSalle already produced the relevant policies concerning detainees who posed a suicide risk as well as policies for inmates placed in Administrative Segregation. The problem with responding to this request is that every jail needs to "observe" all detainees in a variety of situations. In short, Plaintiffs seek all documents, communications, and policies to operate the JHDC, regardless of whether the policy pertained to the incident in this lawsuit. This would include every policy and communications in virtually every meeting or shift change, all training materials, all post orders, and all TCOLE training materials used at the JHDC. The requirements to monitor inmates in Texas jails are governed by the Texas Commission on Jail Standards, which are available as public information.

9. In Request for Production No. 19, Plaintiffs seek all documents and electronic records, including emails, of all suicide attempts and completed suicides. This information is not separately maintained in a readily accessible form. Instead, someone at all six Texas facilities will need to review all critical incident reports and servers for the time frame requested to determine if any such information was included in an email or critical incident report. As shown in Exhibit A-2, this would require a review of 7,724 critical incident reports for the Texas facilities. This would take one employee multiple weeks at each jail, which also would divert that employee from his or her everyday duties. If the paper files do not include that information,

EXHIBIT A

someone with IT will need to review the servers for all six Texas facilities to try to locate references to attempted suicide or completed suicides.

      10.     Plaintiffs also sent various requests and interrogatories requesting LaSalle to describe or produce all "communications" on a variety of subjects such as training, suicide watch, "observation requirements," jail policies, and communications concerning this lawsuit. (See Interrogatory Nos. 4, 5; Request for Production Nos. 9, 10). This information is impossible to produce because Plaintiffs are seeking LaSalle to list all oral "communications" on a variety of subjects. Someone at each facility would need to interview all supervisors and officers who worked there. For the JHDC, this includes all "communications" from 2013 to the present to determine if such "communications" ever occurred and, if so, the subject matter. Based on the breadth of the requests, the "communications" at issue concern virtually every facet of operating a detention facility. As noted above, this could potentially entail discussions with 3,637 employees (Ex. A-4). It would also require LaSalle to review virtually every document pertaining to suicide watch and suicide training, "observation requirements," and policies. This essentially includes all shift turnout notes, training documentation for every employee, and memos from the Wardens and other supervisors. In short, responsive information and documents cannot be collected for such a broad request.

11. I declare under penalty of perjury that the foregoing is true and correct."

*Robert Jay Eason*

Jay Eason, Director of Operations

Executed on February 7, 2019.

6

EXHIBIT A