IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| SALVADOR MARTINEZ and GLORIA MARTINEZ, Individually and as personal Representatives of the ESTATE OF MICHAEL MARTINEZ, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 6:17-cv-9-ADA-JCM |
| SOUTHWESTERN CORRECTIONAL, L.L.C. d/b/a LASALLE CORRECTIONS, L.L.C., MICHAEL CRITTENDEN, CHRISTOPHER SIMPSON, and MILTON WALKER, | § § § § § § | |
| Defendants. | § | |

## DECLARATION OF KEVIN SUMRALL

| | |
|---|---|
| STATE OF LOUISIANA | § |
| | § |
| PARISH OF LINCOLN | § |

Pursuant to 28 U.S.C. § 1746, I, Kevin Sumrall, do hereby declare under penalty of perjury that the following is true and correct:

1. "My name is Kevin Sumrall. I am the Development Executive for LaSalle Management Company, L.L.C. ("LaSalle Management"). As part of my job duties, I monitor and consult with all correctional facilities operated by various affiliated entities in Louisiana. I am over 18 years of age, have not been convicted of a felony or a crime of moral turpitude, and am competent to make this declaration. As the Development Executive, I am required to have knowledge regarding facility operations, policies in place, inmate counts, employees and jail staffing, employee discipline, investigations by jail personnel, and related documents of detention facilities operated in Louisiana by the various companies affiliated with LaSalle Management. In Louisiana, the facilities operated by the affiliated companies are generally referred to as "LaSalle" facilities. I have access to the data and records that was collected from the facilities discussed below and in the attached Exhibits and I reviewed the data. I have personal knowledge of the facts stated herein, and I certify that such facts are true and correct to the best of my knowledge.

2. LaSalle Management is a private correctional company. Corporations affiliated with LaSalle Management contract with local governments and with the federal government to

operate county jails, detention facilities, and correctional facilities in various states. I assist with monitoring the operations in the Louisiana facilities.

3. I have reviewed the Plaintiffs' Initial Discovery Requests and the Motion to Compel filed by Plaintiffs. I also reviewed the email from the lawyers for the Plaintiffs where they offered to narrow certain discovery requests. Plaintiffs seek many categories of records from facilities in Louisiana between November 1, 2005 and January 11, 2017. During that time frame, nine (9) facilities were operated in Louisiana by entities affiliated with LaSalle Management. A list of those facilities and dates of operation is attached to this declaration as Exhibit B-1. Each Louisiana facility is operated by a separate limited liability company. For instance, the Jackson Parish Correctional Center is operated by Jackson Parish Correctional, L.L.C. Each of the other Louisiana facilities has a similarly-named limited liability company that operates it. The Defendant in this lawsuit is Southwestern Correctional, L.L.C. d/b/a LaSalle Corrections, L.L.C. (the "Defendant"). This is a separate Texas corporation that has no operations in Louisiana, no involvement in the Louisiana jails, and no control over the operations of the separate Louisiana companies.

4. Two of the Louisiana facilities are no longer operated by a LaSalle-affiliated entity: the Claiborne Parish Detention Center where operations ceased on July 31, 2015 and the Lincoln Parish Detention Center where operations ceased on March 31, 2013. The records from these facilities are no longer available because all inmate files and medical records were returned to the respective Sheriff's office at the time the contract to operate those facilities expired. Payroll and accounting files were destroyed in 2015.

5. The Jackson Parish Correctional Center and the River Correctional Center are operated by LaSalle-affiliated entities, but are staffed with employees of the Sheriff's offices for those Parishes. Likewise, prior to September 1, 2018, the Catahoula Correctional Center and, prior to May 21, 2017, the LaSalle Correctional Center were staffed with employees of the local Sheriff's offices and LaSalle entities only managed the facilities. The Defendant would need permission from the respective Sheriff's offices to locate and release any documents from these facilities, including inmate files, employee files, disciplinary records, and incident reports of any nature. Those Sheriffs are unlikely to release documents to a Texas company, even if it is affiliated with LaSalle Management.

6. The Defendant, even if it had control over the Louisiana corporations, cannot produce any documents from the Claiborne Parish Detention Center and the Lincoln Parish Detention Center because none exist. Likewise, the Defendant cannot produce any documents from the Jackson Parish Correctional Center, the River Correctional Center, the Catahoula Correctional Center, or the LaSalle Correctional Center, because the Defendant, a Texas corporation, has no control over documents, data, and information maintained by four, separate Sheriff's offices in Louisiana. The entities that operate the jails in Louisiana cannot release any documents without the approval of the respective Sheriffs, because the files and documents are the property of the respective Sheriffs' offices.

7. In the time frame requested by the Plaintiffs, there were three facilities in Louisiana operated by LaSalle-affiliated entities. Those are the Madison Correctional Center

("Madison"), the Richwood Correctional Center ("Richwood"), and the Winn Correctional Center ("Winn"). To locate many of the records requested by Plaintiffs, LaSalle personnel at these three Louisiana facilities will separately need to review thousands of pages of files going back over 10 years. The facility files are not maintained in a manner where the records requested by Plaintiffs can be easily located, if such records even exist at all.

8. In Interrogatory No. 7 and Request for Production No. 19, Plaintiffs seek records of all attempted suicides that resulted in injuries requiring medical attention beyond first aid. This information is not separately maintained so that attempted suicides could be located without reviewing an extremely large volume of material. Attempted suicides at the Louisiana facilities are documented with an Unusual Occurrence Report (UOR). However, UORs that documented attempted suicides are not filed separately. The UORs are supposed to be filed at each Louisiana facility on a monthly basis in chronological order. Depending on the severity of the incident, a UOR, with all supporting documents, will range from 1 page to over 100 pages, each, and may include lengthy attachments and statements. Someone at all three Louisiana facilities will need to review all UORs for the time frames requested. Each report will need to be reviewed in detail to identify those that documented an attempted suicide. Each report will also need to be reviewed further to determine whether any detainees needed "medical attention beyond first aid" or offsite medical care. The actual number of UORs at Madison, Richwood, and Winn cannot be determined, but it is in excess of 1000 UORS per facility annually. A UOR is completed for anything unusual that occurred on the facility; from an attempted suicide, to maintenance issues, to a problem with a vehicle, to an issue with the kitchen or commissary, to medical issues. There are no log books or summaries of UORs at any of the Louisiana jails. So each UOR would need to be reviewed to find documents related to attempted suicides. This would take one employee at least 12 weeks at each jail to review two to three years of records, which also would divert that employee from his or her everyday duties. If the UORs do not sufficiently describe an actual attempt to commit suicide, or the degree of injuries resulting from an attempted suicide, or do not state that a detainee had to be transported for offsite medical care, someone at each facility will then need to review the separate medical files for the detainees. As shown in Exhibit B-2, this amounts to 75,149 inmate medical files for the Madison, Richwood, and Winn facilities alone.

9. In Request for Production No. 5, Plaintiffs seek all disciplinary records for correctional officers for failure to properly monitor detainees. For the jails staffed with employees of the Sheriff's offices, each Sheriff has final disciplinary authority and owns all disciplinary files. The Defendant, a Texas company, cannot direct the Sheriffs to release those files. On this issue as it relates to monitoring detainees, jails in Louisiana are governed by Louisiana Basic Jail Guidelines, which are set forth by the Louisiana Commission on Law Enforcement. I am generally familiar with the rules from the Texas Commission on Jail Standards ("TCJS") that apply to jails in Texas. The Louisiana Guidelines are very different from the TCJS rules and do not have the specific monitoring requirements as set forth in the TCJS. The Madison, Richwood, and Winn facilities, however, do have monitoring requirements.

10. The Louisiana jails do not have a separate disciplinary charge for "failure to monitor." Instead, this violation would be categorized as falsification of records or gross negligence. These disciplinary charges, however, include numerous other infractions. The actual charge used depends on the degree of the infraction, any harm that resulted, and will vary

from facility to facility based on the discretion of the charging officer. All employee disciplinary actions are maintained by Human Resources at the Madison, Richwood, and Winn facilities and are filed with the employees' personnel files. To locate any disciplinary action against an employee for the failure to monitor detainees, someone at all three Louisiana facilities will need to review all personnel files for all employees for the time frames requested. Then, for any employee that received some disciplinary action, each form will need to be reviewed in detail to determine the reason for the discipline and whether it fits in the definition of "failure to monitor." As shown in Exhibit B-3, this would require a review of 1,569 personnel files. This would take one employee over a month at each jail, which also would divert that employee from his or her everyday duties. To determine the total number of employees, Jay Eason, my counterpart for the Texas facilities, directed HR at LaSalle corporate headquarters to review all personnel and payroll records for each Louisiana facility and provide the summary listed in Exhibit B-3. I also reviewed the back-up data and it is accurate to the best of my knowledge.

11. Plaintiffs also sent various requests and interrogatories requesting Defendant to describe or produce all "communications" on a variety of subjects such as training, suicide watch, "observation requirements," jail policies, and concerning this lawsuit. (Interrogatory Nos. 4, 5; Request for Production Nos. 9, 10). The Defendant, a Texas corporation, has no access to employees at the Louisiana jails. Even if it did, this information is impossible to produce because Plaintiffs want a list all oral "communications" on a variety of subjects. It would require someone at each facility to interview all supervisors and officers who worked at each from 2005 through 2017 to determine if such "communications" ever occurred and, if so, the subject matter. Based on the breadth of the requests, the "communications" at issue concern virtually every facet of operating a detention facility. As noted above, this could entail discussions with 1,569 current and former employees (Ex. B-3). It would also require LaSalle to review virtually every document pertaining to suicide watch and suicide training, "observation requirements," and policies. This essentially includes all shift turnout notes, training documentation for every employee, and memos from the Wardens and other supervisors. In short, responsive information and documents cannot be collected for such a broad request.

*Declaration of Kevin Sumrall*

4

EXHIBIT B

12. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge."

_____
Kevin Sumrall, Development Executive

Executed on February 8, 2019.