**Marvin Moos**

| | |
|---|---|
| **From:** | Marvin Moos |
| **Sent:** | Monday, December 31, 2018 4:41 PM |
| **To:** | Scott Medlock; 'Chris Bell' |
| **Cc:** | Claudia Sauceda |
| **Subject:** | Martinez v. LaSalle |

Scott & Chris,

This is to summarize our various discussions on limiting the scope of the discovery requests subject to the motion to compel.  Please advise if there are any modifications needed based on what I have in my notes, or if there are any further requests that can be modified.  Again, I apologize for the delay, but too many hardline filing deadlines got in the way in December.

Many requests concern "all facilities operated by LaSalle from 2001 to present."  I sent you the list of those facilities, including those that LaSalle no longer operates.  The proposed scope limitations are:

Geographic proposal:  Only facilities in the Fifth Circuit, which are Texas and Louisiana.  This excludes all facilities in Arizona, Georgia, and New Mexico.

Temporal proposal: 10 years prior to incident (Nov. 1, 2015) through date of lawsuit (Jan. 11, 2017).  The exception is Jack Harwell Detention Center, which is a continuing request.  We will provide data on these dates for the number of inmate and employee files that need to be revised to locate the various types of information requested.

On the day that you filed the motion to compel, I served second supplemental responses, etc.  My notes reflect that you were going to review those and advise if the second supplement resolved any issues in the motion to compel.

Also, you asked if we could modify answers to state that all documents in LaSalle's custody and control have been produced, or something to that effect.  I'm working on third supplement now to try to alleviate the concern that we withheld something.

My notes reflect the following comments/discussions:

ROG #4:         Seeks a "detailed description of the substance of every communication and document" that relates to incident.  My notes show that you would consider re-phrasing this one—there is no way to recreate every verbal communication.

ROG #7:         Asks to "describe in detail any events (including, but not limited to, completed and attempted suicides)" that resulted in deaths or injuries requiring medical attention beyond first aid.  The issue here is attempted suicides, which may not have been tracked before state requirements to do so.  Also, we need to discuss the "describe in detail" instruction.  Finally, on the question of "attempted suicides," we are way over the line of HIPAA and privacy interests of third parties who may have been suffering from mental health issues.  This last issue will need Judge Manske's input if we can't narrow it (notwithstanding the protective order in place).

ROG #11:        Requests all inmate deaths regardless of cause.  I don't believe we ever resolved the overbreadth concerns, other than Chris's comment that you are looking for deaths that involved a failure to monitor inmates in the timeframes required.  My notes show that Scott did not want deaths of natural causes.  Please advise if we can narrow this to a smaller subset.

EXHIBIT D

ROG #15:        Requests each instance where jailers at Jack Harwell facility were cited for violating "any" rule of TCJS. As we objected, this is overbroad and will require a review of all personnel files. Further, TCJS has no jurisdiction over Louisiana jails. Can you narrow the "rule violation" at issue?

ROG #19:        I supplemented with the names and dates of operation of the facilities (just have not put this in 3rd Supp. ROG Answer yet). This ROG also mentions "accrediting bodies." Scott said he meant the American Correctional Association (ACA), the National Commission on Correctional Health Care (NCCHC), and one other. Can you advise what third "body" Scott was thinking of? I scribbled down AFSCME, but I believe that's a union...

RFP #4:        Also seeks copies of "accreditation reports" for Jack Harwell facility. See above, ROG #19, re clarification needed.

RFP #5:        Even narrowed with the geographic and temporal scopes above, this still requires a review of personnel files to locate "all records related to any disciplinary actions ... against jail personnel at any facility ... for failing to monitor inmates."

RFP #6:        Seeks "all documents related to investigations conducted by" the TCJS, the Texas DPS, "or any other law enforcement agency" regarding inmate suicides. The "related to" phrase opens this up to very broad search. It also presumes that LaSalle received documents from outside law enforcement.

RFP #9:        Seeks "all documents or communications concerning training provided" at Jack Harwell facility "concerning monitoring inmates...." As we discussed, this essentially involves all training of detained persons—jail inmates are monitored in many ways and under many circumstances. Scott mentioned he was not concerned with things like offsite transportation, in-house escorts, recreation, visitation, and the like. But this does not sufficiently narrow the request. I suggested suicide watch and AdSeg. This was not accepted, per my notes. There is also the issue of "communications." As phrased, this requires a massive document and electronic search.

RFP # 11:        Seeks lawsuit documents for "deaths and/or suicide attempts" at LaSalle facilities. Again, the term "deaths" takes this out of the proposed issue of suicides caused by a failure to monitor. Scott indicated that he wants suits, answers, MTDs, and judgments. I need to know if this can be narrowed as Chris suggested so that I can advise Court if we can produce or we need to squabble about overbreadth.

RFP #18:        Seeks "documents relating to all lawsuits, settlements, pleadings, and judgments where LaSalle Corrections paid a claim" alleging violations of Section 1983, the ADA, the Rehabilitation Act, or negligence. This requests all documents that "relate" in any manner to virtually every civil rights lawsuit filed against LaSalle for any reason. My notes reflect that you would consider carving out some claims. There is also the issue of confidential settlements sealed by another court.

RFP #19:        Seeks all documents relating suicide attempts and completed suicides, including emails. As noted above, the attempted suicides may reveal mental health issues of third parties. I am still trying to learn if this can be electronically searched and for what time periods.

RFP #20:        Is redundant. Per Chris, he suggested answering by referring to RFP #11. Still, we need to discuss the issue of attempts further.

Scott also suggested we produce TCJS audits in lieu of certain requested documents. Will that be sufficient for ROG # 15 and RFP #19 (the ones where I made this note)?

My notes do not show that we discussed every ROG and RFP. There may be further issues that crop up as we finalize the Response and Declaration in support. In the meantime, please advise of any comments on the above.

Thanks,

EXHIBIT D

*Marvin C. Moos*
Attorney at Law



2777 Allen Parkway, Suite 1200 | Houston, Texas 77019
713 333 4500 | 713 333 4503 | 713 333 4600 facsimile
mmoos@hrmlawyers.com
www.hrmlawyers.com

CONFIDENTIALITY NOTICE

This electronic transmission contains information that may be confidential, protected by the attorney/client privilege, attorney work product or other applicable privileges, or constitute private information which may be exempt from disclosure under applicable law.  If you are not the intended recipient, you are hereby notified that any review, distribution, disclosure, copying or use of the contents is strictly prohibited.  If you have received this message in error, please notify the sender immediately and delete this message (including any attachments) and all copies thereof.  Thank you.

EXHIBIT D

**Marvin Moos**

| | |
|---|---|
| **From:** | Scott Medlock <scott@edwards-law.com> |
| **Sent:** | Thursday, January 03, 2019 4:13 PM |
| **To:** | Marvin Moos; Christopher Bennett |
| **Cc:** | Claudia Sauceda |
| **Subject:** | Re: Martinez v. LaSalle |

Marvin,

Chris and I reviewed the below.

You are correct as to the geographic and temporal limitations below.

I don't believe the second supplement completely resolved any of the issues in the motion to compel.

Rog #4 – we can agree that this does not require a verbatim re-creation of every verbal communication, but would ask for LaSalle to identify all communications that it is aware of. For example, if the warden had a meeting with the major, lieutenant, and sergeant about the incident, then the interrogatory should describe that meeting to the best recollection of the participants. As we can agree this interrogatory is limited to Mr. Martinez' death, I think there shouldn't be any overbreadth concerns.

Rog #7 – we have a protective order (Doc. 50) that should alleviate the concerns about third parties information. If you believe the existing protective order is insufficient, please propose one that would address this concern. We can agree to limit this to attempted suicide incidents that required off-site medical attention. I would suspect that there would be documents separate from individual inmates medical files that show who went off site in any given time period, and it would be relatively simple to ascertain which of those trips were related to a suicide attempt.

Rog #11 – at this time, we can agree that the request is limited to the information in custodial death reports. I don't think there will be an overwhelming number of deaths, and after reviewing this basic information Chris and I can request additional information about any specific deaths.

Rog #15 – We can limit this request to exclude TCJS rules regarding: bond, inmate property (except as it relates to suicide prevention), showers, veteran status, telephone use, identification (except as it relates to medical care or suicide prevention), facility design, fire safety, record keeping (except as it relates to suicide prevention, medical attention, or inmate observation), new construction (as the rules apply to descriptions of the design or construction of the facility), release from custody, reports to be submitted to TCJS (such as daily population reports, etc.), matters in Title 37, pt. 9 (except as they relate to suicide prevention, provision of medical attention, or ad seg), sanitation, food service, discipline and grievances, recreation and exercise, education and rehabilitation programs, inmate labor assignments, religious practices, commissary, correspondence, and visitation. As we discussed, we do expect production of the report TCJS provides to the facility after each inspection (to the extent they have not already been produced).

Rog #19 – the request was intended to ask for the ACA, and NCCHC, as well as any bodies that accredit the correctional practices. We can agree to limit this request to bodies that accredit the correctional practices of LaSalle – if they also get human resources accreditations, etc. we can exclude those.

RFP #4. – see Rog #19

RFP #5 – we cannot agree to any limitation on this, other than the temporal and geographic limitations. This is clearly relevant to the claims in the suit.

EXHIBIT D

RFP #6 – we can discuss this again, but we don't agree that this should be a very large universe of documents. Obviously, if LaSalle never received documents from outside agencies, LaSalle is not obligated to produce those. But, if there is an email from a warden saying "those damn Texas Rangers are always here complaining about all the suicides," that email would be relevant (and would enable Plaintiffs to make a document request to the Rangers to get the documents LaSalle doesn't have). If you have specific concerns about this that we are unaware of, and would enable us to limit the request, please let us know.

RFP #9 – for this request, we can agree to limit the request to monitoring inmates as it relates to suicide watch, ad seg, and the housing areas.

RFP #11 – we cannot agree to limit this request further than complaints, motions to dismiss, settlements, and judgments.

RFP #18 – we can agree to limit this to allegations that involved treatment of inmates, or injuries to inmates. For example, if there was an ADA employment lawsuit, or a car wreck negligence lawsuit, those can be excluded.

RFP #19 – see Rog #7 above. Our position is that the protective order resolves these matters.

RFP #20 – we can agree this is redundant in light of the other agreements/proposals above.

Scott Medlock
Attorney
Edwards Law Group
1101 E. 11th St.
Austin, TX 78702
(512) 623-7727
(512) 623-7729 [fax]
www.edwards-law.com

This email and any files attached are privileged and confidential, and is/are intended only for the individual named.  If you are not the intended recipient or otherwise have reason to believe that you have received this message in error, please notify the sender by email and delete this message immediately from your computer.  Any other use, retention, dissemination, forwarding, printing, or copying of this message and any attachments is strictly prohibited.

**From:** Marvin Moos <MMoos@hrmlawyers.com>
**Date:** Monday, December 31, 2018 at 4:41 PM
**To:** Scott Medlock <scott@edwards-law.com>, Chris Bell <cbell@lasallecorrections.com>
**Cc:** Claudia Sauceda <CSauceda@hrmlawyers.com>
**Subject:** Martinez v. LaSalle

  Seeks a "detailed description of the substance of every communication and document" that relates to incident.  My notes show that you would consider re-phrasing this one—there is no way to recreate every verbal communication.

EXHIBIT D