IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| SALVADOR MARTINEZ and GLORIA MARTINEZ, Individually and as personal Representatives of the ESTATE OF MICHAEL MARTINEZ,<br>        Plaintiffs, | § § § § § § | |
| v. | § § | CIVIL ACTION NO. 6:17-cv-9 |
| SOUTHWESTERN CORRECTIONAL, L.L.C. d/b/a LASALLE CORRECTIONS, L.L.C., MICHAEL CRITTENDEN, CHRISTOPHER SIMPSON, and MILTON WALKER,<br>        Defendants. | § § § § § § | |

## DEFENDANT'S SUR-REPLY TO REPLY TO
## RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

Southwestern Correctional, L.L.C. ("LaSalle") files its Sur-Reply to Plaintiffs' Reply to Defendant's Response to Motion to Compel to address the issues raised in Plaintiffs' Reply.

### I. INTRODUCTION

Michael Martinez committed suicide on November 1, 2015 while detained in the Jack Harwell Detention Center ("JHDC"). Plaintiffs allege that LaSalle violated Section 1983 and is vicariously liable for common-law negligence for the acts of Michael Crittenden, Christopher Simpson, and Milton Walker (the "Individual Defendants"). (Doc. 1, ¶¶ 57–68).

Plaintiffs filed a motion to compel that did not focus on the propriety of their overbroad requests, but essentially argued that LaSalle made boilerplate objections. (Doc. 54). After three extensions, LaSalle filed its Response explaining the objection for each discovery request in dispute.[1] In the interim, as explained in the Response, the parties attempted to narrow the scope

---

[1] Plaintiffs complain about the time that has passed since they filed the motion to compel. But Plaintiffs did not oppose the three extensions. The first two were due to motion and discovery deadlines that had to be addressed

of the requests. (Doc. 64). Even with Plaintiffs' narrowed definitions, the requests were still unduly burdensome. This was repeatedly discussed with Plaintiffs' counsel (although not for many hours or with "voluminous" correspondence as alleged (Doc. 66, p. 3)). The requests still require a review of every personnel file at 17 facilities in Texas and Louisiana. (Doc. 64.1–64.10). And other information will require a review of every medical file for every inmate. (*Id.*). Defendant stands on its objections to geographic and temporal scope.

Plaintiffs assert that Defendant "refused to even state what scope the Defendant does not believe [to be] objectionable." (Doc. 66, p. 13). This is incorrect. The difficulty in locating the information requested was explained numerous times. The fact that incidents and disciplinary records are not filed in a manner convenient to the "narrowed" requests does not reduce the sheer volume of material that needs to be reviewed to locate potentially responsive documents.

Plaintiffs contend that they are entitled to all documents and information on discipline for "failure to monitor" at all facilities, not just the JHDC. As repeatedly explained, this could entail virtually every aspect of a jail where movement by detainees is, by definition, restricted.

The dispute here is not LaSalle's justified objections. It is the impropriety of Plaintiffs' patently overbroad requests. Plaintiffs have still failed to explain why they seek so much information from different facilities that has no bearing on whether LaSalle failed to protect one allegedly suicidal detainee at one jail in Waco. And, Plaintiffs' interrogatories frequently demand a "detailed description" of a variety of information (in eight different interrogatories) or seek "all" documents relating to other categories of questionable import (in eight different

---

by defense counsel in other matters as well as the need to draft the lengthy declarations explaining that, even as purportedly narrowed, the information sought by Plaintiffs is not maintained in a manner to locate it readily. The third extension was due to a filing deadline in the Texas Supreme Court as well as serious health problems with a family matter. Plaintiffs' counsel was aware of this, also. Additionally, the sheer volume of material requested needed to be addressed with declarations as was discussed with the Court during one of the telephonic conferences where the Court commented that it would need evidence of undue burden and proportionality. (Doc. 55)

2

requests). Objections based on overbreadth or a fishing expedition are entirely permissible.[2] FED. R. CIV. P. 26(b)(1); *Boyd v. Am. Airlines, Inc.*, No. 3-01-CV-2230-D, 2002 WL 32360294, at \*1–2 (N.D. Tex. Oct. 17, 2002) (sustaining overbroad discovery objections); *Don Stevenson Design, Inc. v. TBP Enters. I, Ltd.*, No. 5:16-CV-01128-RCL, 2018 WL 6704466, at \*3 (W.D. Tex. Dec. 19, 2018) (plaintiff not "permitted to go fishing" with discovery requests).

The key issue in this suit is relatively clear-cut: Martinez committed suicide and the Individual Defendants allegedly falsified the log in the area of the jail where Martinez was detained (and LaSalle immediately terminated them). Defendant produced all files relating to Martinez and the JHDC policies in place. Should further information be uncovered, Defendant will supplement as allowed by the Rules.

But, Plaintiffs still seek *every* document from *all* LaSalle facilities in Texas and Louisiana (a total of 17 facilities) for *every* inmate death, regardless of the cause; *all* documents where an employee was accused of violating a rule of the Texas Commission on Jail Standards ("TCJS"); and *every* document pertaining to policies and "communications" for the "observation" of *all* detainees, specifically requesting this information for inmates that *do not* pose a risk of suicide. LaSalle must continue to contest the patently overbroad discovery. The notion that there has been some sort of waiver is not supported by the case law or the responses.

## II. ARGUMENT

### A. The Court has discretion to consider Defendant's objections on their merits.

Plaintiffs seem to argue that this Court has no discretion in resolving discovery disputes. (Doc. 66, p. 1). But, in fact, courts have broad discretion in resolving disputes over discovery motions. *Imperial Ethiopian Gov't v. Baruch-Foster Corp.*, 535 F.2d 334, 337 n.8 (5th Cir.

---

[2] Defendant asserted many factually-specific objections. (*See, e.g.*, Doc. 54.1, Answers to Interrogatories Nos. 4, 5, 7, 9, 11, and 15 and Responses to Requests for Production 5, 6, 9, 10, 11, 18, and 19). Plaintiffs fail to explain how these amount to waiver.

1976); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) (denial of motion to compel reviewed for abuse of discretion); *Sycamore IP Holdings LLC v. AT&T Corp.*, 2:16-CV-588-WCB, 2017 WL 3719978, at *1 (E.D. Tex. May 22, 2017). This includes the propriety of discovery requests that are not proportional and create an undue burden.

Plaintiffs assert that "Defendant's abusive objections have waived" any requested relief. (Doc. 66, p. 1). But their assertion of waiver is based on the conclusory allegation that Defendant's objections were "boilerplate." (*Id.*). The mere fact that Defendant repeated similar objections multiple times is not *de facto* evidence that the objections were boilerplate. Rather, Defendant needed to challenge Plaintiffs' consistently improper requests. The same flaws were present in multiple requests, so similar objections were lodged.[3] This repetition does not make the objections inherently boilerplate; nor does it negate the valid factual and legal bases for making these objections. The court is not required to find these objections were waived, as Plaintiffs assert. Neither the rules nor the relevant case law requires this result.[4] *See, e.g.*, *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 592–98 (N.D. Tex. 2018). The Court should review Defendant's objections and rule after considering the objections made to each of Plaintiffs' discovery requests and the evidence in support, not on Plaintiffs' blanket assertion of waiver.

**B.     Many of Plaintiffs' requests are still improper.**

Plaintiffs' next claim—that Defendants' objections collectively "have no merit"—is absurd. (Doc. 66, p. 2). Plaintiffs requested "all communications," "all documents," and information related to "all deaths," as well as other broad categories of information from facilities in two states over 12 years. Many of these requests are overbroad on their face and not

---

[3]     Contrary to Plaintiffs' assertions, Defendant's objections were specific, not boilerplate. *See* n.2 *supra*. As discussed *infra*, The *Lopez* and *Heller* opinions are not as clear-cut as Plaintiffs contend.

[4]     Plaintiffs' offers to narrow their requests—even though made after they filed their Motion to Compel—belie their assertion of waiver. In effect, Plaintiffs are arguing that they would still have demanded all documents.

stated with "reasonable particularity" so as to provide notice of what is actually being requested. *Lopez*, 327 F.R.D. at 575; *see also* FED. R. CIV. P. 34(b)(1)(A) ("request [for production] must describe with reasonable particularity each item or category of items").

"Boilerplate requests, like boilerplate objections, are not recognized and constitute an abuse of the discovery process." *S.E.C. v. Mazzo*, No. SA-CV-121327-DOCAN, 2013 WL 12172628, at *20 (C.D. Cal. Oct. 24, 2013). "'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A)." *Lopez*, 327 F.R.D. at 575 (quoting *In re Asbestos Prods. Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009)). Plaintiffs' subsequent offers to narrow the requests—made only after they filed their motion—did little to address Defendant's disputes as to the scope of information requested, as explained in Defendant's Response.

Moreover, the party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." *E.E.O.C. v. Woodmen of the World Life Ins. Soc'y*, No. 8:03CV165, 2007 WL 1217919, at *1 (D. Neb. Mar. 15, 2007). And "when [a discovery] request is overly broad on its face or when relevancy is not readily apparent, the party seeking discovery has the burden to show the relevancy of the request." *Cooper Clinic, P.A. v. Pulse Sys., Inc.*, 14-1305-JAR-GLR, 2017 WL 396286, at *3 (D. Kan. Jan. 30, 2017). Additionally, the party seeking discovery must make its own "showing of many or all of the proportionality factors [in Federal Rule of Procedure 26(b)(1)], including the importance of the issues at stake in the action ... and the importance of the discovery in resolving the issues, in opposition to the resisting party's showing." *Lopez*, 327 F.R.D. at 584. Plaintiffs failed to do any of this in their initial motion.

Plaintiffs make scant effort to demonstrate the relevance of their requests and why they

believe they are entitled to such broad information, first addressing many issues in their Reply. (Doc. 66, pp. 4–11). Their new arguments are insufficient and unconvincing.

### 1. Requests seek information that is not relevant.

Defendant does not assert, as Plaintiffs imply, that none of Plaintiffs' requests are relevant. Despite Plaintiffs' statement to the contrary, Defendant produced many documents in response to these requests.[5] (Doc. 66, p. 13). But Defendant maintains that the disputed discovery requests still seek information outside the permissible scope of discovery. Those requests are, therefore, not relevant or proportional to the issues in this case. In their Reply, Plaintiffs somewhat argue relevance for the first time, but their arguments are hindered by their failure to candidly address the full scope of the discovery requests in dispute.

Relying on its Response and without restating each of its objections here, Defendant nevertheless emphasizes its objections to Plaintiffs' requests for policies, training, and incidents (both at JHDC and at other facilities) that pertain to "observation requirements" or any alleged "failure to monitor" inmates. These categories are so broad as to swallow any attempt Plaintiffs made to carve out relevant and similar issues. As explained in the Response, nearly all of Defendant's obligations and functions at its detention facilities could reasonably be categorized to include the "observation" or "monitoring" of inmates. And, citing *Connick v. Thompson*, 563 U.S. 51 (2011); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328 (Tex. 1998); and *Huckaby v. A.G. Perry & Son, Inc.*, 20 S.W.3d 194, 201 (Tex. App.—Texarkana 2000, pet. denied), Plaintiffs concede that they are only entitled to evidence that could demonstrate a

---

[5] *See* Doc. 66, p. 13 ("Defendant has refused to produce any responsive information at all"). This is patently false. Defendant has produced 760 pages of documents to date, including the JHDC contract with McLennan County; the complete classification and medical files for Martinez; JHDC policies for the Texas CARE System, Count Procedures, Escorted Trips for Non-Medical and Medical, Special Management Units, Terminal Illness and Death While in Custody, and the Suicide Prevention Plan; the JHDC Health Services Plan filed with the TCJS; complete personnel and training files for the Individual Defendants; witness statements; the JHDC floor plan; shift duty rosters; contracts with the JHDC medical provider and mental health provider; visitor log information; logs for J and N Wings; and the declaration page for the applicable insurance policy.

6

"pattern" of "similar incidents" under "reasonably similar circumstances." (Doc. 66, p. 7). Evidence of incidents that lack that similarity is not discoverable, and yet that is exactly what Plaintiffs still seek. Their Reply fails to explain why they demand dissimilar information.

Additionally, Plaintiffs' authority to attempt to argue that information from Defendant's Louisiana jails would be relevant also misses the mark. (Doc. 66, pp. 9–11). Relying on *Williams v. City of Birmingham*, 323 F. Supp. 3d 1324 (N.D. Ala. 2018), and *Serigne v. Preveau*, CIV.A. 11-3160, 2013 WL 1789520 (E.D. La. Apr. 26, 2013),[6] Plaintiffs imply that courts base rulings on the number of employees or facilities that would be required to respond to a given request. (Doc. 66, p. 9). This assertion is disingenuous. In each of the cases, the court ordered production of evidence from all employees under the same jurisdiction—the City of Birmingham, St. Bernard Parish, and according to their reply, the State of Texas. (*Id.*). In this case, there are two jurisdictions at issue. Each jurisdiction has its own standards, requirements, and rules that facilities must follow. That is a fundamentally different situation. Further, the courts in *Williams* and *Serigne* based their rulings on the "similarity" requirement discussed above. Detention facilities in two different sovereigns—Texas and Louisiana—do not operate under the same regime and are not "similar" for the purposes of this argument. And, the facilities in Louisiana are not even operated by Defendant Southwestern Correctional as Plaintiffs incorrectly argue.[7] (Doc. 66, p. 10; Doc. 64.6). For these reasons, and for the reasons in Defendant's Response, the Court should deny the Motion to Compel.

### 2. All settlements in all Section 1983 cases are not discoverable.

---

[6] Plaintiffs cite to an unpublished order that they apparently intended to attach to their Reply, but it was not attached, so Defendant can offer no reply. But even taking their explanation at face value, the *McCollum* court also extended the order to produce only to the extent of that one jurisdiction.

[7] And as Plaintiffs themselves stated in addressing *Gould, Inc. v. CNA*, 809 F. Supp. 328 (M.D. Pa. 1992): "Understandably, the court found that Gould's procedures had no relevance to the procedures at the subject plant when it was owned and operated by a different company." Such is the case here with the Louisiana facilities.

7

Plaintiffs continue to argue they are entitled to judgments, settlements and other pleadings in all Section 1983 cases. (Doc. 66, pp. 6–11). Their Reply fails to meet the "heightened, more particularized showing of relevance." *See In re Motions to Quash Subpoena filed by Craft Gallery, Ltd.*, No. 11-CV-01239 AW, 2013 WL 8367788, at *1 (W.D. Tex. Apr. 5, 2013); *Chappelle v. Varano*, 2012 WL 3241503, at *3 (M.D. Pa. Aug. 7, 2012) ("the information sought from the settlement agreement is not sufficiently relevant to the current litigation"); *MedImmune, L.L.C. v. PDL BioPharma, Inc.*, No. C 08–5590 JF (HRL), 2010 WL 3636211, at *2 (N.D. Cal. 2010) (party has interest in protecting settlement negotiated with expectation of confidentiality). Plaintiffs made *no* showing of relevance with respect to prior settlements, let alone a "heightened, more particularized showing of relevance" to meet the applicable standard.

### 3. Requests seek information that is unduly burdensome to secure.

Plaintiffs also imply that Defendant should have served affidavits showing undue burden *with* their responses and objections to Plaintiffs' overbroad-on-their-face requests. (Doc. 66, p. 11). This is not the procedure. If the rules required an affidavit at the time a response was due, this would be set forth in the discovery rules. A party resisting discovery for undue burden must present some evidence of the alleged burden with its response to a Motion to Compel, as this very Court noted, (Doc. 55), but there is no such requirement in the initial stages of discovery. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 478 (N.D. Tex. 2005) (party resisting discovery must present evidence of undue burden in response to motion to compel).

As for the "substance" of Plaintiffs' undue burden argument, they focus on two issues: the requested communications and the assertion that any burden is outweighed by the importance of the information. Plaintiffs wholly ignore the other evidence of undue burden and make no effort to counter the now-undisputed evidence of undue burden. In addition to the arguments in

8

its Response, the breadth of information sought by Plaintiffs is still great and that the importance of that information is relatively small when compared to the disproportional burden.

Many of Plaintiffs' discovery requests seek information that is of no relevance to the issues in this case. Because their requests are not narrowly tailored to seek only "similar" information, the importance of the information is minimal. In fact, Plaintiffs even note the option of further narrowing their requests and the potential impact that such a decision could have on the burden imposed. (Doc. 66, p. 12). That is precisely what Defendant proposed for many requests. Plaintiffs' overbroad requests relating to "observation" and "monitoring" of inmates, for example, are among the requests that impose the most significant burden. Given the significant burden and the minimal relevance of any documents in response to requests that are not limiyed to suicidal detainees, these requests are indeed unduly burdensome.

Similarly, Plaintiffs' requests include demands for "every communication" and "all communications" relating to various subjects. As noted in the Response, using the definition of "communication" in the Court's Local Rules, a communication would include even a conversation in passing between two people. Thus, Plaintiffs' requests are fundamentally different—and vastly broader—than the request in the case on which they rely. (Doc. 66, p. 12). In support of their requests for "communications," Plaintiffs rely on *Fonville v. District of Columbia*, 230 F.R.D. 38, 39 (D.D.C. 2005). (Doc. 66, p. 12). There, the plaintiff was a retired police officer who sued his employer, the city, based on a demotion prior to retirement. *See id*. The plaintiff propounded discovery asking his employer "to describe communications from [his supervisor] to other [police] officials or staff regarding plaintiff's demotion." *Id.* at 43. The city objected to the request claiming a deliberative process privilege and undue burden. The *Fonville* court found, as Plaintiffs note, that the city's undue burden objection was "frivolous" because all

it had to do was ask the supervisor what conversations he had had about Fonville's demotion. *Id.* at 44. *Fonville* is fundamentally different and is easily distinguishable from this case.

Here, Plaintiffs have requested "every communication" and "all communications" relating to numerous subjects—regardless of who was involved in the communications. A complete response to these requests would involve interviewing hundreds of employees and former employees to see if they had had any "communications" with anyone about the identified topics. This is dramatically different than *Fonville* where the defendant could ask one person questions about a single topic.

Because the burden imposed by responding to Plaintiffs' overbroad discovery requests far exceeds the possibility of locating any relevant information and because Plaintiffs did not even address the undue burden evidence, Plaintiffs' Motion to Compel should be denied.

    **C.**    **Request for sanctions should be denied.**

In addition to the arguments in Defendant's Response, the sanctions should be denied for the following reasons. First, Plaintiffs' agreement to limit their discovery requests is a tacit agreement that their initial requests were overly broad in the first place. Thus, the objections were justified. Second, "'[t]he duty to make a 'reasonable inquiry' is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. It is an objective standard similar to the one imposed by [Federal Rule of Civil Procedure] 11. ... Ultimately what is reasonable is a matter for the court to decide on the totality of the circumstances." *Lopez*, 327 F.R.D. at 577 (quoting *Chapman & Cole v. Itel Container Int'l B.V.*, 865 F.2d 676, 686 (5th Cir. 1989)). The Response and declarations adequately address this.

Third, "[b]y signing discovery requests, the attorney or party serving discovery requests

makes an affirmative certification that the requests are not unreasonable or unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." *Id.*; *see also* FED. R. CIV. P. 26(b)(1), 26(g)(1). The Reply does not explain how this was satisfied in the first place.

### III. CONCLUSION

For the above reasons, and as explained in Defendant's Response, the Court should deny Plaintiffs' Motion to Compel and request for sanctions and grant Defendant LaSalle's Motion for Protection protecting it from further responses to the challenged discovery requests.

Respectfully submitted,

**HORNE ROTA MOOS, LLP**

By: /s/Marvin C. Moos
      MARVIN C. MOOS
      SBN: 14413900

2777 Allen Parkway, Suite 1200
Houston, Texas 77019
(713) 333-4500
(713) 333-4600 - facsimile
mmoos@hrmlawyers.com

ATTORNEYS FOR DEFENDANT,
**SOUTHWESTERN CORRECTIONAL, L.L.C. d/b/a LASALLE CORRECTIONS, L.L.C.**

# **CERTIFICATE OF SERVICE**

I hereby certify that on **February 26, 2019**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Jeff Edwards**
**Scott Medlock**
EDWARDS LAW
The Haehnel Building
1101 East 11th Street
Austin, Texas 78702
*Attorneys for Plaintiff*

**Tony L. Schaffer**
SCHAFFER LAW FIRM PLLC
14360 Falcon Head Blvd, Suite 100
Austin, Texas 78738
*Attorney For Defendant Milton Walker*

**Kimberly Land Cormier**
SHAW & ASSOCIATES, P.C.
10670 N. Central Expressway, Suite 245,
Dallas, Texas 75231
*Attorney For Defendant Chris Simpson*

**Christopher Bennett**
LAW OFFICES OF ZIMMERMAN, ZIMMERMAN, COTNER, LEJEUNE, RESSETAR & BENNETT
3501 W. Waco Drive
Waco, Texas 76710
*Attorney for Plaintiff*

**A. Robert Lamb, Jr.**
LAW OFFICE OF A. ROBERT LAMB, JR.
6860 North Dallas Parkway, Suite 200
Plano, Texas 75024
*Attorney For Defendant Michael Crittenden*

       */s/ Marvin C. Moos*
       MARVIN C. MOOS